UNITED NATIONS KOREAN RECON-
STRUCTION AGENCY, Plaintiff-
Appellant,

v.

GLASS PRODUCTION METHODS, INC.,
Defendant-Appellee.

UNITED NATIONS KOREAN RECON-
STRUCTION AGENCY, Plaintiff-
Appellant,

v.

FRAZIER–SIMPLEX, INC., Defendant-
Appellee.

Nos. 224, 225, Docket Nos. 26496, 26497.

United States Court of Appeals
Second Circuit.

Argued Feb. 9, 1961.

Decided May 17, 1961.

Thorold J. Deyrup, New York City (Berle, Berle & Brunner, Robert H. Seabolt, Stuart D. Wechsler, New York City, on the brief), for plaintiff-appellant.

John H. Babigian, New York City (H. A. & C. E. Heydt, New York City, on the brief), for defendant-appellee Glass Production Methods, Inc.

Murray I. Gurfein, New York City (Robert J. Haft and Goldstein, Judd & Gurfein, New York City, on the brief), for defendant-appellee Frazier-Simplex, Inc.

Before LUMBARD, Chief Judge, MADDEN, Judge, United States Court of Claims,* and WATERMAN, Circuit Judge.

LUMBARD, Chief Judge.

These are appeals from judgments entered by the United States District Court for the Southern District of New York denying relief to the United Nations Korean Reconstruction Agency (hereinafter UNKRA) on its claims against Glass Production Methods, Inc., former-ly Frazier-Simplex International Corporation (hereinafter International), and Frazier-Simplex, Inc. (hereinafter Simplex). In its complaints, UNKRA alleged that Simplex had, through its agent International, contracted with UNKRA for the design and construction of a flat glass plant in Korea, or that it had created apparent authority in International to enter into such a contract in its behalf. Both Simplex and International are also charged with fraud, and International with breach of a warranty of authority. Simplex repudiated the contract signed by International, and UNKRA brought these suits to recover for the added expenses and delay caused by the repudiation.

The actions were consolidated for trial. After hearing the evidence, Judge Weinfeld filed an opinion, 184 F.Supp. 51, in which the facts are fully stated and we need not repeat them here. He held that Simplex had been bound to perform under the contract signed in its name by International because it had created apparent authority in International to sign a contract in its behalf; that UNKRA thereafter waived all its claims against Simplex in exchange for Simplex's promise to perform engineering services for the plant to be built in Korea; and that all rights against International arising out of the negotiations leading up to the first contract signed by International were surrendered by UNKRA in exchange for International's promise to supervise various phases in the construction of the plant. The court directed entry of final judgment for the defendants, and the plaintiff has taken these appeals.

UNKRA maintains that the district court erred in several respects, some involving questions of fact on which our power to review is limited by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., and others turning on the construction of written contracts, which are fully open to appellate review. See Iravani Mottaghi v. Barkey Importing

* Sitting by designation.

Co., 2 Cir., 244 F.2d 238, 248, certiorari denied 1957, 354 U.S. 939, 77 S.Ct. 1402, 1 L.Ed.2d 1538.

1. The first contract signed by any of the parties was the one of June 1954, to which Lyon McCandless, International's principal executive officer and Thomas Jamieson, contracting officer for UNKRA, were signatories. UNKRA does not claim here that McCandless had actual authority from Simplex to enter into this contract on its behalf. The agreement between Simplex and International clearly reserved to Simplex the right to reject any business submitted to it by International, and Simplex exercised this prerogative.

■ Judge Weinfeld found, however, that Simplex had, by its arrangement with International and by its acquiescence in the acts of International, conferred on McCandless apparent authority to conclude an agreement that would bind Simplex. The facts upon which this conclusion is based are supported by the record, and we agree with the trial judge's finding that the appearance of authority in International was "abundantly established."

■ Simplex contends that the doctrine of apparent authority is available only to parties who act with reasonable prudence, and that UNKRA was not justified in relying on the representations of McCandless. Judge Weinfeld disagreed and held that "UNKRA * * was justified in relying upon the apparent authority of International to enter into said agreement." 184 F.Supp. at page 57. This conclusion required the formulation of a standard of care and an application of that standard to the facts as determined by the trial court. Under the rule in this circuit, such a finding is freely reviewable on appeal. Romero v. Garcia & Diaz, 2 Cir., 1960, 286 F.2d 347, 355, certiorari denied 1961, 81 S.Ct. 905, and cases there cited.

■ On the record in this case, we agree with Judge Weinfeld's conclusion that UNKRA was reasonable in relying on the indicia of authority conferred upon International by Simplex. Not only did Simplex forward the original request for information submitted by UNKRA to International for response, but it permitted International to distribute advertising material the content of which implied that International was Simplex's alter ego "Outside the U. S. A." The mere fact that the contract was a specialized and detailed one and that it called for a considerable expenditure of funds did not impose upon UNKRA the duty of inquiring as to the written authority of International, which it may well have considered to be established beyond question.

Since we agree with Judge Weinfeld that Simplex was bound by the contract of June 1954 because it had conferred indicia of authority on International, we need not inquire into whether, regardless of any apparent authority, Simplex ratified the contract by its actions after June 1954.

■ 2. In October 1954, when UNKRA discovered that Simplex did not consider itself bound by the contract of June 1954, UNKRA entered into negotiations directly with Simplex, which then maintained that it was not obligated to perform under the June contract. As a result of these conferences, a contract was signed in January 1955 by J. Earl Frazier for Simplex, John L. Thurston for UNKRA, and Lyon McCandless for International and for Frazier-Simplex Korea, Inc., a newly organized Connecticut corporation not a party to this litigation, which was the assignee of the June contract and which undertook responsibility for the work other than the engineering duties which were assumed by Simplex. Under the contract Simplex agreed to perform the engineering and design services required for the construction of the flat glass plant in Korea. It was Simplex's conduct during these conferences which, according to UNKRA's complaint, amounted to fraud and vitiated the agreement which the parties reached in January.

In the district court UNKRA contended that Simplex's false disclaimer of lia-

bility and its failure to disclose the full terms of its agency agreement and dealings with International amounted to fraud. UNKRA's counsel testified that the attorney for Simplex had refused to show him a copy of the agency agreement between Simplex and International, and that all during the negotiations prior to the January 1955 contract UNKRA was ignorant of the real relationship between Simplex and International. Simplex's attorney testified to the contrary. Judge Weinfeld resolved the issue of credibility in favor of Simplex and decided that "the terms of the agency agreement were known to UNKRA's representatives before the January 1955 agreement was signed." We accept this finding of fact as it is not shown to be clearly erroneous. Federal Rule of Civil Procedure 52(a).

On this appeal UNKRA abandons its claim of fraud and contends that the January 1955 contract was voidable because UNKRA accepted its terms under a material mistake of fact or law induced by Simplex. UNKRA claims that Simplex did not, during the course of the negotiations, disclose fully the part it played in creating the appearance that International had authority to bind Simplex. Thus, even if, as Judge Weinfeld found, Simplex in good faith disputed its liability without any purpose of misleading UNKRA, UNKRA would have us relieve it of the effect of the January 1955 contract on the ground that Simplex's conduct during negotiations was in fact misleading. This contention is without merit.

The issue of Simplex's liability under the June 1954 contract was disputed by the parties in good faith. UNKRA certainly had knowledge of the representations which had caused it to believe that International had been authorized to bind Simplex, and it could have discovered the source of those representations during the conferences with Simplex by asking Simplex's attorney about them. Simplex did not believe that it was liable on the contract, and it was not obliged to volunteer, for UNKRA's benefit, all the arguments which might be used in establishing a case against it under the doctrine of apparent authority.

UNKRA maintains now that it was misled by Simplex into believing that no case could be made out against Simplex under the June 1954 contract, and that it therefore contracted directly with Simplex in January 1955. A more discerning view of UNKRA's attitude appears to be that taken by Judge Weinfeld: "The project was stalled on the issue of whether Simplex was a party to the June 1954 agreement. Coulter [Agent General of UNKRA], confronted with this embarrassing situation, was determined to cut through the red tape, and was intent upon getting Simplex to do the design work. He was not interested in a lawsuit which offered only the prospect of further delay and uncertainty of result. Accordingly, when it appeared that Simplex would not participate, General Coulter, to secure its services promptly, directed his staff to negotiate at once with its representatives to avoid further delay and embarrassment." 184 F.Supp. at page 59.

Even if Simplex had done what we hold it was not obliged to do and had told the full story of its role in clothing International with indicia of authority, it seems clear that UNKRA would not have sued it on the June 1954 contract but would have done just what it did do, namely enter into the January 1955 agreement in order to complete the construction of the plant with dispatch.

3. It was, therefore, in a desire to proceed with the plans which had been drafted that the parties met and agreed on the terms of the January 1955 contract. UNKRA argues that the January 1955 agreement was nothing more than an executory accord which, until it was fully performed by Simplex, did not release Simplex of any liability it had incurred under the June 1954 contract. In support of this claim, UNKRA points to Article XXVII of the January agreement, which provides:

"Except as hereinabove modified, all the terms and conditions of the

Contract dated June 25, 1954 shall remain in full force and effect."

However, the contract did not expressly reserve any rights which had accrued against Simplex, nor did the UNKRA officials believe at the time they entered into the agreement that their claim against Simplex would prevail if tested in litigation. Had Simplex been a signatory to the earlier contract, it might indeed be improbable that UNKRA would relinquish its rights against a company which was clearly bound to some performance merely to substitute for them other possible claims. But in this case the evidence reveals that UNKRA may well have found it so desirable to bind Simplex to some performance that it was willing, in exchange, to surrender certain doubtful claims which had already arisen.

■ Whether the January 1955 contract was an executory accord or a substituted contract—whether it was performance or a promise that UNKRA was accepting in satisfaction of its claim—is a question that turns on the intention of the parties. E. g., Moers v. Moers, 1920, 229 N.Y. 294, 128 N.E. 202, 14 A.L.R. 225. Judge Weinfeld held that "the sole agreement which governs the rights of Simplex and UNKRA is that of January 1955, and upon its execution, Simplex was discharged from any obligation under the June 1954 agreement." This conclusion was based not merely on the construction of the written terms of the contract but on the trial judge's impression of the witnesses who testified, including those who negotiated for UNKRA and Simplex. We cannot say that the conclusion that the parties intended a novation is clearly erroneous under Federal Rule of Civil Procedure 52(a), and we affirm this finding of the district court.

■ 4. Even after the January 1955 contract, there remained the obligation of International under and because of the June 1954 agreement. Judge Weinfeld construed certain letter contracts of February 16, 1955, signed by representatives of UNKRA and International, as waiving all claims arising out of the June 1954 contract which could be asserted by UNKRA against International. The crucial clause in the letters is the following:

"Frazier [meaning Frazier-Simplex Korea, Inc.] and International are hereby relieved of their obligations under Title I of the Contract dated June 25, 1954."

The trial judge held that in exchange for being relieved of any liability because of the June 1954 contract, International "was clearly recognized as the principal for the performance of the construction, procurement and supervision." 184 F.Supp. at page 62. He construed the letter contracts as an exchange whereby International, under the name of Frazier-Simplex Korea, Inc., its *alter ego*, undertook performance of all but the engineering portion of the contract in return for a waiver of all possible liability for its prior conduct in regard to UNKRA and the Korean project. We disagree.

■ Since the trial judge's conclusion here turned not on his impressions of the states of mind of witnesses who testified at the trial but on the construction of written documents, his ultimate finding concerning the intent of the parties is freely reviewable on appeal. E. g., United States v. John McShain, Inc., 103 U.S.App.D.C. 328, 258 F.2d 422, certiorari denied 1958, 358 U.S. 832, 79 S.Ct. 52, 3 L.Ed.2d 70.

In the contract of June 1954, International was named as the principal for the performance of all the services due under the agreement. It was to take charge not only of the engineering or design phase of the project, but was also obliged to perform with respect to procurement, construction, supervision, inspection, and technical assistance to the operating staff. The agreement of January 1955 concerned only Title I of the June 1954 contract, and it bound Simplex to perform the engineering or design services necessary for the project.

Article VII of the January 1955 contract read as follows:

"a. It is understood and agreed that, except as set forth in paragraph b. below, Frazier [International] shall be relieved of all those obligations set forth in the Contract dated June 25, 1954, which are undertaken by Engineers [Simplex] under the terms of this Contract; it being further understood that the above undertakings by Engineers shall fulfill all requirements and obligations of Frazier to UNKRA under Title I of the Contract dated June 25, 1954, except as modified by this Contract.

"b. Frazier shall not be relieved of its obligation under Title I of the Contract dated June 25, 1954 pending a complete adjustment and settlement with respect to funds transferred under Title I of that Contract."

The first letter contract of February 16, 1955, expressly referred to Article VII of the January 1955 contract, and, in relation to that clause, purported to complete the orderly transfer of responsibility for Title I of the project from International to Simplex. Certain trust funds which were held by International as advance payments for the design and engineering work were to be returned to UNKRA. Thus, once the parties had agreed to the terms of this letter, International was relieved of the obligation to perform engineering services, which it had undertaken in June 1954.

But with this transfer of responsibility, UNKRA did not manifest any intention of relieving International of its separate liability for losses caused by its fraud or breach of warranty of authority. Having concluded an agreement with Simplex whereby, at added expense, Simplex undertook the engineering duties, UNKRA would naturally be expected to relinquish the promise made to it by International to perform the same services. But there would be no reason for UNKRA to waive, for no consideration whatever, the rights which had arisen against International because of the misrepresentations of Mr. McCandless.

International was bound to perform all the phases of the construction once it signed the June 1954 agreement. We do not, therefore, agree with Judge Weinfeld's conclusion that UNKRA, in exchange for releasing rights, secured International's obligation to act as the principal for the performance of various duties. These obligations dated back to the June 1954 contract, and UNKRA would not have benefited at all by having them reaffirmed. It certainly would not have surrendered the claims which had arisen against International because of McCandless' misrepresentations merely in order to have International repeat its earlier promise to perform, to which it was already indisputably bound.

For these reasons we affirm the judgment of the district court in favor of Frazier-Simplex, Inc. on appeal number 26497; we reverse the judgment entered for Glass Production Methods, Inc., and remand case number 26496 to the district court for further proceedings.

WATERMAN, Circuit Judge (concurring and dissenting).

I would not only affirm the judgment of the district judge in favor of Frazier-Simplex, Inc. in Docket Number 26497 but I would also affirm his judgment in favor of Glass Production Methods, Inc. in Docket Number 26496. I am content with Judge Weinfeld's discussion and disposition, D.C.S.D.N.Y.1960, 184 F. Supp. 51, 61–62. I am convinced that the proper interpretation of the February 16, 1955 letter agreements, without more, is the interpretation placed upon them by the district judge.

However, as the opinion of the court below points out, there *was* more. The February 16 letters terminated UNKRA's contractual relationship with appellee as to Title I of the June 25, 1954 contract; and, as the court below states, UNKRA, with full knowledge of all the material facts bearing upon its claims of fraud and breach of warranty did

not at that time reserve or assert any rights with respect thereto. Later in 1955, by its unilateral acts, UNKRA voluntarily terminated first Title IV, and then the remaining titles of the contract, Titles II, III and V, and on neither of these occasions did it reserve or assert the rights it now claims. I agree with the judge below that this constant course of conduct in 1955 is consistent with no other interpretation than the one he placed upon it—that of an intentional and purposeful relinquishment of the claims UNKRA now seeks to enforce in Docket Number 26496.