John P. ANDREWS, Albert Boyd and
Gladys Boyd, William E. Cox and
Lillian I. Cox

v.

UNITED STATES.

No. 112-59.

United States Court of Claims.
Nov. 1, 1961.

Peter H. Behr, San Francisco, Cal., for plaintiffs.

J. Mitchell Reese, Jr., Dept. of Justice, Tax Division, Washington, D. C., with whom was Asst. Atty. Gen. Louis F. Oberdorfer, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the brief.

PER CURIAM.

This is a suit by plaintiffs who are taxi drivers for the recovery of income taxes paid by them for the years 1955–1957. The sole question involved is whether tips received by plaintiffs constitute gross income to them, as defined in section 61(a) of the Internal Revenue Code of 1954, 68A Stat. 17, 26 U.S.C. § 61 (1958 ed.), or whether the tips constitute gifts as defined in section 102 of the Code, 68A Stat. 28, 26 U.S.C. § 102 (1958 ed.). We believe that the tips received by plaintiffs are includable in gross income and in so holding we agree with and rely on the decision by the Tax Court in Roberts v. Commissioner, 10 T.C. 581, aff'd 9 Cir., 176 F.2d 221 (1948). See also Commissioner v. Duberstein, 363 U.S. 278, at page 285, footnote 7 (1960), 80 S.Ct.

1190, 4 L.Ed.2d 1218. Plaintiffs are therefore not entitled to recover and their petition will be dismissed.

It is so ordered.

Findings of Fact

The court, having considered the evidence, the report of Trial Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:

1. Plaintiffs John Andrews, Albert Boyd, and William Cox were employed as taxicab drivers in San Francisco, California, during the years 1955 through 1957. Plaintiffs Gladys Boyd and Lillian Cox are parties to this action for the sole reason that they filed with their husbands joint income tax returns for the years 1955 through 1957. (Hereinafter, all findings refer to the years 1955 through 1957 and the term "plaintiffs" refers to the plaintiff taxicab drivers.)

2. The plaintiffs were members of Chauffeurs' Union, Local 265. Each plaintiff was employed by the Yellow Cab Company of San Francisco, California.

3. By this action, the plaintiffs seek refund of income taxes paid for the years 1955, 1956 and 1957 as to which deficiencies had been assessed by the Commissioner of Internal Revenue on account of tips received by the plaintiffs. The question for determination is, are such tips gifts or gratuities, or compensation?

4. At the beginning of the trial, the parties stipulated and agreed that "tip" means the payment by a passenger to a taxicab driver of an amount of money over and above the required charge shown on the meter of the taxicab for the particular trip in which the tip was rendered, and that it was recognized by the passenger, the driver, and the employer that the tip was the personal property of the driver upon receipt. The tips were received concurrently with the payment of fares by passengers.

5. It was further stipulated and agreed to in words, as follows:

"* * * At no time during the said period did the three plaintiffs render any service to any of their

passengers who gave them tips or gratuities different from or greater than the service rendered by the three plaintiffs to any of their other passengers who did not give them tips or gratuities during the period. At no time during the period did the three plaintiffs request tips from any passengers or indicate disapproval in any manner whatsoever to any passenger who did not give them a tip or gratuity."

6. The amount of the fare for each trip was computed by a meter which was connected to the running gear of the taxicab. This was required by local ordinance of the City of San Francisco, which also fixed the rates which might be charged at 50 cents for the first one-fourth mile, 10 cents for each additional one-fourth mile, and ten cents for each 2½ minutes of waiting or traffic delay time.[1] A stated schedule of rates was also provided for trunks and large baggage which could not be conveniently carried within the vehicle. The ordinance specifically provided that no charge was to be made by the driver for loading or unloading baggage.

7. Section 1138(b) of the Police Code of San Francisco, in effect during all periods material herein provides as follows:

"Excessive Charges. Any charges made, or sought to be made, any patron of a public passenger vehicle for hire in excess of the charges authorized by this Article for the particular type of service rendered or sought, when shown either by confession of the party, or competent testimony, or any failure on the part of any driver or operator of any public passenger vehicle for hire to make proper returns to his employer, shall result in immediate suspension of the license of such driver or operator until such time as, after due process, such license is either reinstated or revoked.

"Either the person, or the employer of a person, responsible for any overcharge shall be required to make restitution to any defrauded patron, for the amount of such overcharge."

8. The working agreement between the plaintiffs' union and the taxicab operators of San Francisco was contained in a master agreement entered into between the various employers of taxicab drivers and the union. This agreement was the basis upon which the plaintiffs' employment was carried out. In general, it provided for a day to consist of not more than nine hours of straight shift time out of twenty-four hours, with one hour off for lunch four hours after the beginning of the shift. The provision for wages was $10.30 per day, computed on an hourly basis, or 50 percent of the weekly bookings whichever was greater, the same to be in lieu of all other commissions and bonuses. Effective June 1, 1955, this amount was increased to $10.50 per day, and it was again increased to $11 effective June 1, 1957. There were additional benefits provided such as a health and welfare plan, and also vacations of one or two weeks to eligible employees. A pension plan became effective June 1, 1957.

9. The Yellow Cab Company of San Francisco owned and operated the taxicabs driven by the plaintiffs in their work. This company furnished the gasoline, oil and provided necessary repairs and maintenance on the taxicabs.

10. The average daily wage paid to San Francisco Yellow Cab Drivers for the years in suit was as follows: 1955, $12.16; 1956, $12.39; 1957, $12.55. This amount did not include fringe benefits.

11. The parties have agreed and the testimony confirms that the amount of tips received by the plaintiffs equalled ten percent of the fares collected by them. It is clear from the evidence that while most passengers did tip the drivers, many did not.

---

[1] Apparently the rates were somewhat lower than those quoted herein prior to June 1, 1957, see sec. 34 of Joint Exhibit 3.

12. The rules issued by the Yellow Cab Company contain the following provisions:

### "Courtesy

"On stands covered by more than one cab, a patron is entitled to take any cab he chooses. First-up rule cannot apply when patron chooses another cab. Treat all passengers with the utmost courtesy, no matter how provoking. Let tolerance and patience prevail.

"Be courteous to other motorists and pedestrians. Our motto is, 'Wave them through and watch them smile.' Be a goodwill builder by following this rule.

"During the later hours, especially in the outlying residential areas, when you are taking an unescorted lady to her home, it is part of the Yellow Cab service to wait until she has entered the house.

"Another Yellow Cab custom is saying 'Good morning' or 'Good evening' to your patrons as they approach your cab. Also be sure to say 'Thank you' when the customer pays his cab fare. Tipping your hat will result in a lot of extra tips, especially from women. It is gentlemanly also to give a modest salute to male patrons.

"Under any and all conditions avoid arguments with patrons. Try to live up to our motto that the patron is always right, by not giving sharp or surly answers. Many times a smile or a soothing word will avoid an argument.

### "Tips

"Your tips will average out, and for this reason we will not tolerate any driver making any gesture of disapproval because some passenger did not tip him. Remember that tips are given for unusual service and you are supposed to render Yellow Cab service on all trips regardless of whether the patrons do or do not tip."

13. The evidence is not satisfactory as to the reason passengers handed tips to the three plaintiffs when paying their taxi fare. The fact the tip was paid them makes it clear that its payment was related in some way to the ride in the taxicab.

14. Plaintiff Andrews reported no tips as income on his tax returns for 1955, 1956 and 1957. The Commissioner of Internal Revenue determined that he received tips totaling $468.73 in 1955, $599.92 in 1956, and $549.54 in 1957. The Commissioner treated these amounts as taxable income and determined deficiencies in tax in the amount of $86 for 1955, $127.54 for 1956, and $111 for 1957. These deficiencies were assessed with interest and thereafter satisfied by payment made by plaintiff on December 29, 1958. On January 8, 1959, plaintiff filed timely claims for refund for 1955–1957.

15. Plaintiffs Albert and Gladys Boyd reported various amounts as income from tips on their joint returns for 1955, 1956 and 1957. The Commissioner of Internal Revenue determined that plaintiff Albert Boyd received tips totaling $640.14 in 1955, $685.76 in 1956 and $634.01 in 1957. These amounts exceeded those reported on their returns. The Commissioner treated these amounts as taxable income and made certain other adjustments which are not in dispute. Deficiencies in tax in the amount of $95.44 for 1955, $100.70 for 1956, and $93.60 for 1957 were assessed with interest. These assessments were satisfied by payment made by plaintiffs Boyd on November 4, 1958. Thereafter, over-assessments of tax were allowed in the amount of $4.73 for 1955, $2.81 for 1956, and $2.86 for 1957. On January 8, 1959, plaintiffs Boyd filed timely claims for refund for 1955–1957.

16. Plaintiffs William and Lillian Cox reported various amounts as income from tips on their joint returns for 1955, 1956 and 1957. The Commissioner of Internal Revenue determined that plaintiff William Cox received tips totaling $474.27

in 1955, $580.93 in 1956, and $583.48 in 1957. These amounts exceeded those reported on their returns. The Commissioner treated these amounts as taxable income and made certain other adjustments which are not in dispute. Deficiencies in tax in the amount of $103.09 for 1955, $113.50 for 1956, and $108.57 for 1957 were assessed with interest. These assessments were satisfied by payment made by plaintiffs Cox on October 2, 1958. On January 8, 1959, plaintiffs Cox filed timely claims for refund for 1955–1957.

17. The Commissioner of Internal Revenue disallowed the plaintiffs' claims for refund for 1955–1957 and this suit was timely filed on March 10, 1959.

### Conclusion of Law

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are not entitled to recover, and the petition is therefore dismissed.