**UNITED STATES of America**

v.

**Harold G. APPLEGARTH.**

**Crim. A. No. 25862.**

United States District Court
D. Maryland.
June 11, 1962.

Joseph D. Tydings, U. S. Atty., and Stephen H. Sachs, Asst. U. S. Atty., for plaintiff.

Leon H. A. Pierson, H. Russell Smouse and Pierson & Pierson, Baltimore, Md., for defendant.

WINTER, District Judge.

Defendant, charged in a three-count indictment for violation of 18 U.S.C.A. § 1341 (mail fraud), arising out of his participation in the activities of Freestate Savings and Loan Association, Inc., has moved for an indefinite continuance of his trial " * * * until such time as the effect of the aforesaid recent, widespread, and highly damaging publicity has subsided and threat of the same interfering with the administration and ends of justice removed."

The publicity to which defendant refers consists of newspaper publicity arising out of (a) the appointment of a receiver for Freestate Savings and Loan

---

Association, (b) the appointment of a receiver for Suburban Maryland Savings & Loan Association, with which defendant allegedly had some connection, (c) Maryland's failure to adopt effective savings and loan regulatory regulation until very recently and the impact of the new law, including the large number of receiverships and conservatorships, (d) campaign oratory, charge and counter-charge about responsibility for effective savings and loan regulation, or the lack of it, generated by a sharply contested primary election held May 15, 1962 for the Governorship and other State-wide offices, and (e) the campaign speech of one of the unsuccessful candidates, which was repeated on television on several occasions.

Defendant attached to his motion reproductions of the various newspaper articles on which he relies and, since the tape for the telecast has been erased, has read to the Court the pertinent portions of the script on which he relies. The Court has read carefully all of the newspaper articles which were submitted.

The various newspaper articles mention defendant only in small part, and solely in regard to the civil aspects and the receivership proceedings of the two building and loan associations with which defendant has had a connection. True, they mention defendant's dealings with those associations, but only in the context of the business wisdom of the transactions in question and not in regard to any possible criminal aspects.

In the main, the newspaper accounts, other than editorials, show on their face that they are straight news reporting of the facts of record which transpired in the Circuit Court for Prince George's County, or the statements of candidates for State-wide office. There is no evidence that the United States Attorney, or any member of his staff, was responsible for or encouraged the publication of any of the material which the defendant finds objectionable. See: U. S. v. Bonanno, 177 F.Supp. 106, 122 (D.C.S.D. N.Y.1959); U. S. v. Bando, 244 F.2d 833, 837–838 (2 Cir. 1957), cert. den. 355 U. S. 844, 78 S.Ct. 67, 2 L.Ed.2d 53 (1957).

The campaign oratory, both that telecast and that reported by the press, is broader in scope, although it does not mention defendant by name. The Court is impressed with the comment in Shushan v. United States, 117 F.2d 110, 116 (5 Cir. 1941), cert. den. 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 (1941), and its application to this defendant:

" * * * He was not an office-holder or a candidate, and the most of the newspaper and other activity was aimed not at him, but at political victory. The American public understands too well the methods of election publicity to take too seriously its utterances. The courts cannot suspend because an election is on and because the cases to be tried may have a political significance. They must consider the concrete question whether there is such public excitement as to prevent a calm judgment by jurors, and to make unreliable the usual methods of obtaining an impartial jury. * * * "

The Court concludes that the publicity *per se* is not, in fact or in law, so prejudicial that defendant may not be afforded a fair and impartial trial at this time. See Blumenfield v. U. S., 284 F.2d 46, 51 (8 Cir. 1960) cert. den. 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692 (1961). Under the circumstances, defendant's safeguard rests in placing prospective jurors upon *voir dire* to determine whether a fair and impartial jury can be selected, U. S. v. Hoffa, 156 F. Supp. 495 (D.C.S.D.N.Y.1957), because mere exposure to adverse publicity does not necessarily result in bias, prejudgment or other disqualification. As recently as May 14, 1962, in Beck v. Washington, 82 S.Ct. 955, the Supreme Court reaffirmed the statement from Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L. Ed.2d 751 (1961), that the constitutional guarantee of an impartial jury is satisfied " * * * if the juror can lay aside his impression or opinion and render a

verdict based on the evidence presented in court."

Defendant's motion is denied.

The denial of defendant's motion will be without prejudice to his right to renew it at or after *voir dire* if the answers elicited from jurors show that defendant's claim of prejudice is grounded in fact.