UNITED STATES of America

v.

Robert F. SUCHMAN.

Crim. No. 25875.

United States District Court
D. Maryland.
June 27, 1962.

Joseph D. Tydings, U. S. Atty., Arnold M. Weiner, Special Asst. to U. S. Atty., Stephen H. Sachs, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Maurice J. Walsh, Chicago, Ill., Thomas G. Gray, Baltimore, Md., for defendant.

WINTER, District Judge.

The defendant's "Motion to Dismiss Indictment for Insufficiency and Defects in Law," "Motion for Continuance of Trial to a Date Beyond the General Elections in November, 1962" and "Motion for Transfer of Proceedings to United States District Court, Northern District of Illinois" have been briefed, argued and submitted.

Notwithstanding a number of grounds alleged in support of the motion to dismiss, defendant argues only two: first, that the indictment constitutes "cryptic" pleading, so that the defendant is not fairly apprised of the crime with which he is charged and, second, that paragraph 4 of the indictment is legally insufficient in alleging that "defendant * * * caused to be placed in an authorized depository for mail matter a letter * * *," because it fails to allege that defendant "willfully caused, etc." In support of his first argument. defendant relies upon Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960); Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944); and United States v. Watson, 17 F. 145 (D.C.N.D.Miss.W.D.1883). Essentially, plaintiff argues that the failure to set forth the alleged "captious, deceptive, and misleading newspaper and direct mail solicitations," *in haec verba,* rather than to summarize them, as was done in the indictment, is the basic legal insufficiency.

The indictment summarizes for over two pages the pretenses and representations alleged to be false and fraudulent when made, and the manner in which it is claimed that they are false and fraudulent.

While the Kann and Parr cases, supra, were prosecutions under the mail fraud statute, they contain no discussion related to the argument made by defendant. The Russell case is quite different in its facts. It was a prosecution for the failure of a witness to answer a question before a congressional subcommittee, and it held that the omission in the indictment to allege in what regard the question was pertinent to the matter under investigation was fatal. True, the Russell case contains general language condemning generality in the language of indictments, but the purpose of specificity is stated to be not only for the protection of the defendant, but for the benefit of the prosecution, by making it possible for courts called upon to pass on the validity of convictions to bring an enlightened judgment to that task. Application of this rule to the indictment in question leads to the conclusion that it is fully subserved.

Although the Watson case, which was also not a mail fraud prosecution, states as a general principle that in criminal pleading a written document should be set out verbatim, the Court added (17 F., p. 150) *"or in substance"* (emphasis supplied). The indictment here complies. In any event, the Court is bound by Linden v. United States, 254 F.2d 560 (4 Cir., 1958). The Linden case was a prosecution for alleged violation of the mail fraud statute. There, the indictment summarized the alleged

captious, deceptive, and misleading statements. See also United States v. Bagdasian, 291 F.2d 163 (4 Cir., 1961), cert. den. 368 U.S. 834, 82 S.Ct. 60, 7 L.Ed.2d 36 (1961). Here, since the summary is sufficiently full and complete to apprise defendant of the crime with which he is charged and to establish a standard by which the Court may determine whether there is sufficient evidence to submit to a jury, the indictment is not defective.

· Defendant's second argument, likewise, is without merit. Defendant is indicted for violation of 18 U.S.C.A. § 1341. That statute imposes criminal sanctions upon a person found guilty of devising or intending to devise a fraud, *inter alia*, who "places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department * * *." The indictment, in addition to referring to 18 U.S.C.A. § 1341, also contains a reference to 18 U.S.C.A. § 2, the aider and abettor, accessory before the fact, statute. Section 2(b) is phrased in terms of whoever *"willfully"* causes an act to be done which if directly performed by him would be an offense is punishable as a principal.

■■■ The law is clear that evidence is admissible to show defendant's violation of 18 U.S.C.A. § 1341 on a theory of vicarious guilt; and, if proceeded against as an aider or abettor, it is not necessary that the defendant be indicted other than as a principal. Hence, the "willfully" adjective of 18 U.S.C.A. § 2(b) need not be alleged. Moreover, paragraph 4 of the indictment is in precisely the language of Form 3 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. While Rule 58, F.R.Crim.P., states that the forms are illustrative and not mandatory, it requires a strong showing for a court to hold that the form is legally insufficient, United States v. Bagdasian, supra. And, lastly, by its bill of particulars, the Government has stated that it proceeds against defendant in part as a principal and in part under 18 U.S.C.A. § 2(a), which does not contain "willfully" at all.

Defendant's argument relates more to the legal sufficiency of proof to be offered by the Government and, if such proof be legally sufficient, the instructions to be given to the jury in determining defendant's guilt, if any, than to the sufficiency of the indictment. Manifestly, it does not indicate that the indictment is defective.

Defendant's motion for continuance is grounded upon alleged prejudicial newspaper publicity covering a period of approximately four years, which defendant argues makes it impossible for him to obtain a fair trial by an impartial jury at this time. Defendant's motion to transfer is also grounded upon this publicity, and the further claim that defendant would be hampered in presenting a defense in this jurisdiction, since his roots are in the Chicago, Illinois area, and character and defense witnesses must be drawn in large part from that locale.

Defendant has submitted two large scrap books of newspaper clippings, which have been read by the Court. They fall into several broad categories: (1) publicity concerning the defendant and Commercial Savings and Loan Association, Inc., of which he was president, beginning in 1958, relating to the fact of indictment, motions and hearings on motions, the trial of the case, subsequent indictments, court proceedings instituted by the Attorney General of New York, in New York, and a suit by Commercial against two postal inspectors, claiming $2,500,000.00 damages; (2) various attempts in the General Assembly of Maryland of 1959 to obtain the enactment of savings and loan association regulatory legislation, the veto of the bill, the subsequent enactment of such legislation in 1961, and the attempt to organize a grand inquest by the Maryland General Assembly to investigate savings and loan associations in 1962; (3) the Maryland Democratic campaign, leading up to the primary election on May 15, 1962, in which the matter of effective regulation

of savings and loan associations was a sharply contested issue; and (4) various factual reports of civil and criminal proceedings involving other savings and loan associations and persons connected therewith, including the proceedings and subsequent indictments returned by Grand Juries in Montgomery County and Prince George's County, Maryland. Other than the publicity falling into the first category, I find no mention of the defendant, except perhaps incidentally; and except for a factual statement by the then United States Attorney and one of his then assistants in 1958 at the outset of the Grand Jury investigation concerning Commercial Savings and Loan Association, Inc., there is no publicity which appears to be inspired by representatives of the United States Government.

Defendant's motion for continuance is governed by the opinion recently filed in United States v. Applegarth, D.C., 206 F.Supp. 686. As in Applegarth, the publicity here was not so prejudicial that the Court can conclude as a matter of law that defendant cannot obtain a fair trial, even though defendant was afforded extended newspaper coverage of his prior trial, a factor not present in the Applegarth case. Where the publicity is not so prejudicial as to require a continuance, the method to insure defendant a fair trial by an impartial jury is by proper use of *voir dire*, rather than indefinite or definite continuance. Only if upon *voir dire* it appears that the jury panel is so tainted by derogatory comment as to be unable to determine defendant's guilt or innocence, solely on the evidence to be presented to them in a judicial forum, should resort be had to continuance. Defendant's motion for continuance will be denied, without prejudice to its renewal at the time of *voir dire*.

As additional support to defendant's motion to transfer, he alleges that his convenience would be better served by a trial in Illinois; yet, in argument, defendant's counsel admits that at the previous trial, involving issues of broader scope, defendant presented only one witness who resided in Illinois. In the light of what has been said about the allegedly prejudicial publicity, there is a failure of proof to show any other reason why the trial should be conducted in Illinois. Defendant's motion to transfer will also be denied.

Subject to the rulings set forth above, trial of the case has been heretofore set for August 13, 1962. The Court will direct that counsel for the Government and counsel for the defendant submit proposed questions for *voir dire*, on or before August 8, 1962, and that counsel confer with the Court in regard to such questions, and such other preliminary matters as counsel may wish to present, on August 10, 1962, at 10:00 A.M.