Katherine F. MILLER, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Joseph M. DeTOTA, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 115, 116, Dockets 28168, 28169.

United States Court of Appeals Second Circuit.

Argued Nov. 21, 1963.

Decided Feb. 13, 1964.

Harris, Beach, Wilcox, Dale & Linowitz, Rochester, N. Y., for petitioners-appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Gilbert E. Andrews, Giora Ben-Horin, Attys., Dept. of Justice, for respondent.

Before MEDINA, WATERMAN and MARSHALL, Circuit Judges.

WATERMAN, Circuit Judge.

Petitioners appeal from adverse decisions of the Tax Court entered in consolidated cases on December 7, 1962, upholding the Commissioner of Internal Revenue's assertion of federal income tax deficiencies against them for the years 1957, 1958, and 1959. 39 T.C. 505. Jurisdiction to review these Tax Court decisions is conferred upon this court by Section 7482 of the Internal Revenue Code of 1954.

Petitioners argued before the Tax Court that the receipts upon which the alleged deficiencies had been based did not constitute income within the meaning of Section 61(a) of the Internal Revenue Code of 1954, because they were gifts expressly excluded from gross income by Section 102(a) of the Code. The Tax Court rejected this argument and ruled that the receipts in question had not been gifts but had been payments of a compensatory nature. We are in agreement with this ruling.

During the years of the claimed deficiencies both petitioners were employees of the Genesee Valley Club, a membership corporation in Rochester, New York, which is a social club offering to members and guests various party and recreational facilities. Petitioner Miller was the club's head bookkeeper and petitioner

DeTota was a headwaiter. The deficiencies asserted against petitioner Miller amounted to $94.11, $111.04, and $122.18 for the years 1957, 1958, and 1959 respectively. Petitioner DeTota's claimed deficiencies for these years were $116.27, $122.18, and $119.33 respectively.

The asserted deficiencies were based upon sums of money both petitioners had received from the identical source and had failed to report as income. The source was a Christmas fund which the Genesee Club had maintained for its employees for many years. Financed solely through voluntary contributions solicited from members by club officials, the fund was kept by the club in a separate bank account. Shortly before Christmas each year every employee of the club was awarded a portion of the money in the fund. Not every employee received the same amount of money, however, for the size of each payment was determined by a formula that took into account each employee's regular salary and his length of service with the club. While some employees who received distributions from the Christmas fund performed tasks which brought them into direct contact with club members, many did not.

Formal authority for the maintenance of the fund, and the procedure to be followed in making payments to employees out of it, were recited in certain rules of the club's House Committee. The pertinent part of the rules relating to the fund and its distribution provided:

J. The solicitation of contributions for the Employees' Christmas Fund and their deposit in a separate bank account. The Chairman shall supervise the allocation and distribution of this Fund by the Manager, according to the following formula:

1. A Christmas bonus shall be paid to employees from funds subscribed by members of the Club. Payments are based on points earned by each employee. Points are credited to each full-time regular employee * * * on the basis of:

(a) *Length of employment*— * *

(b) *Salary*— * * *

* * * * * *

4. Notification of payment of bonus:

(a) Not later than December 10 of each year, the Chairman of the House Committee, after determining the point value, should send a letter to each employee outlining the basis for the bonus, and showing the number of points earned by him during the year, and the value per point. This letter should be an expression of appreciation and encouragement.

(b) Actual payment of the bonus should be made in check on December 15.

* * * * * *

6. Changes in the Bonus Plan.
(a) Inequalities in any individual case which may arise in the application of this formula should be adjusted between the Chairman of the House Committee and the Manager prior to the payment of the Bonus.

In order to raise money for the fund, the club traditionally sent a notice to each of its members at Christmas time, setting forth a list of all club employees, their occupations and their years of service. Accompanying the notice was the following message:

"The Christmas Season approaches and with it the Spirit of Giving. We are sure you will welcome the opportunity to make your annual contribution to the Employees' Christmas Fund. This Fund is maintained and augmented at this time and throughout the year in order to provide tangible recognition at Christmas time of the faithful and efficient service rendered by our employees.

"Will you kindly designate the amount you wish to give on the enclosed card.

Board of Governors."

As is apparent from this message, no member was required to contribute; and contributions were not required to be based on the the the amount of time a member used club facilities, or the amount of club bills he had accumulated during the year.

One of the rules of the Genesee Club required that members and guests refrain from tipping club employees, with the pertinent rule also calling attention to the Christmas Fund:

"Rule 7. No member or visitor shall give money or any gratuity to an employee of the Club. The gratuity fund provides an opportunity for all contributions."

Determining whether specific transfers are gifts within the meaning of the Internal Revennue Code cannot be resolved by resort to any fixed and precise standard. Decision in a case like this depends upon the particular circumstances surrounding the transfers in question. For this reason, most cases require that a reviewing court such as ours give "primary weight" to the conclusions of the trier of fact. Commissioner v. Duberstein, 363 U.S. 278, 289, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960); United States v. Stanton, 287 F.2d 876 (2 Cir. 1961).

This particular case, however, seems to us to present an instance where this court is properly entitled to review in full the conclusions of the Tax Court. This broader scope of review is called for here because the case below was tried on facts which were entirely stipulated, and the lower court's conclusions were based entirely on documentary evidence. Under these circumstances, the factors which demand that heavy reliance be placed upon the findings of the trier of fact, see Commissioner v. Duberstein, 363 U.S. at 289–291, 80 S.Ct. at 1198–1200, 4 L.Ed.2d 1218, simply do not obtain. Here no testimony was taken, and the problem of observing the demeanor of witnesses and apportioning degrees of credibility was nonexistent. The only

evidence upon which the decision below could have been based was of a type which this court is in a position to evaluate as ably as the court below. Therefore, we are permitted to review freely the decision which has prompted this appeal. United Nations Korean Reconstruction Agency v. Glass Production Methods, Inc., 291 F.2d 168, 172 (2 Cir. 1961).

Even when subjected to the more stringent test of full review, however, the Tax Court's decision to refuse to label the transfers in question as gifts must be deemed correct. While we have already noted that no hard and fast rule has been established for deciding when a transfer is a gift within the meaning of Section 102(a) of the Code, some guiding principles were laid down by the Supreme Court in Commissioner v. Duberstein, supra. According to the Duberstein case, the voluntariness of a transfer is not determinative; what controls is the intent with which the transferor executed the transfer. If a payment of the kind involved in this case proceeds from a "detached and disinterested generosity," out of "affection, respect, admiration, charity or like impulses," it is a gift. If, on the other hand, a payment proceeds primarily from "the constraining force of any moral or legal duty," or constitutes a reward for "services rendered," or proceeds from " 'the incentive of anticipated benefit' of an economic nature," the transfer ought not to be deemed a gift. Commissioner v. Duberstein, supra, 363 U.S. at 285, 80 S.Ct. at 1196–1197, 4 L.Ed.2d 1218.

We agree with the Tax Court that the transfers here in question were not gifts, but were, like tips or bonuses, of a compensatory nature and therefore taxable income under the internal revenue laws. If the sums which petitioners received from the Christmas fund had been received directly from club members as tips, they would have been payments in reward for services rendered, and hence taxable income. E. g., Roberts v. Commissioner, 176 F.2d 221 (9 Cir. 1949); Andrews v. United States, 295

F.2d 819 (Ct.Cl.1961), cert. denied, 369 U.S. 829, 82 S.Ct. 846, 7 L.Ed.2d 794 (1962). We think that the stipulated facts in this case indicate clearly that the sums of money which petitioners received were just as compensatory as ordinary tips.

The club rule which prohibited tipping called attention to the existence of the Christmas fund and indicated that it provided "an opportunity for all contributions." The rule thus stood as a direct request to members to put money they might otherwise expend in tips into the hands of employees via the Christmas fund. Members were, in other words, asked to respond to whatever motivations prompted tipping by making contributions to the Christmas fund instead. While we recognize that some club employees performed tasks which did not bring them into direct contact with members, this fact should not merit a finding that the contributions and payments proceeded from more of a feeling of "detached and disinterested generosity" than otherwise would be the case. As the Tax Court noted, the Genesee Valley Club was, in effect, one huge service organization, and members were served just as assuredly by employees working behind the scenes as by those whose jobs brought them into direct contact with members.

Other circumstances surrounding these transfers are equally compelling as indicia of an intent to reward past services and encourage the faithful performance of duties in the future. The letter to club members soliciting contributions to the Christmas fund asked members to contribute in order to provide "tangible recognition * * * of the faithful and efficient service rendered by our employees." Moreover, a rule of the club's House Committee provided that the letter sent to employees explaining the computation of payments from the fund "should be an expression of appreciation and encouragement."

Finally, the method whereby the club computed the size of the payment each employee was to receive indicates that the purpose of the payment was to compensate employees for past services and encourage them to continue to perform their duties ably in the future. The size of the payments was based upon the regular salary and length of service of each employee, thereby tying fund distributions directly to services rendered to members of the club. Moreover, a rule of the House Committee provided for adjustments in the size of payments in the event of "inequalities" arising from the application of the distribution formula, indicating that employees earned the right to have payments they received compare somehow with payments which other employees received.

■ Petitioners also argue that we cannot rule that these payments were not gifts because the Tax Court failed to take testimony from contributors as to their reasons for contributing. While such testimony may have been helpful in determining the issue at hand, we believe that the other indicia of intent stipulated into the record more than support a finding as to the nature of the contributions. More importantly, however, since the burden of proof was on petitioners to show that they were entitled to exclude these payments from their gross income, Gaugler v. United States, 312 F.2d 681, 684 (2 Cir. 1963), it was they who should have offered to introduce such testimony in evidence if they felt it could have established an intent different from that indicated by the other evidence stipulated.

■ Finally, we cannot turn our decision on a 1945 ruling of the Commissioner of Internal Revenue which petitioners have called to our attention, I.T. 3726, 1945 Cum.Bul. 63. Assuming that the ruling does apply to this particular set of facts, petitioners here failed to show reliance upon it by anyone involved in this case; and, at any rate, such a ruling does not commit the Commissioner, the Tax Court, or this Court, to any particular interpretation of the law. See Helvering v. N. Y. Trust Co., 292 U.S. 455, 468, 54 S.Ct. 806, 78 L.Ed. 1361 (1934); Sims v. United States, 252 F.2d

434, 438 (4 Cir. 1958), aff'd, 359 U.S. 108, 79 S.Ct. 641, 3 L.Ed.2d 667 (1959). This ruling, promulgated in 1945, cannot compel us to arrive at a result different from that demanded of us by our interpretation of a later Supreme Court decision.

Affirmed.

MEDINA, Circuit Judge (dissenting).

"Yes, Virginia, there is a Santa Claus," wrote Francis Pharcellus Church in his famous editorial published in the New York Sun on September 21, 1897. The impulse to give generously to those less favored by fate or circumstance flourished for centuries as the Christmas Spirit moved the hearts of men. And nothing could be more natural or more human than the giving of gifts to those with whom there exists a bond of relationship, members of the family, employees or others who have helped to make the course of life run more smoothly, such as elevator boys, grocery clerks, laundresses, and a host of others. Perhaps some occasional cynic made his gift thinking only of what he might receive in return in the way of special favors. But the generality of mankind rejoiced in the thought that there truly was a Santa Claus and that he could do his bit just because it was Christmas time. Nor did it in the slightest degree detract from the essential nature of the gift that it expressed appreciation for acts of courtesy or affection or service by those in the little circle of the donor's life to whom the gifts were made.

Consistently with this almost universally recognized manifestation of good will, and uninterruptedly over the years, the individual sums paid over to the employees of private clubs from Christmas contributions by members were very properly not considered by the Internal Revenue Service to be wages and income, taxable under the Income Tax Law. No withholding for income tax purposes was required; and these gifts were not included in the wages upon the basis of which Social Security payments were made. Indeed, this state of affairs was recognized and formalized in I.T. 3726.[1]

Suddenly came the change of policy reflected in the case before us. The effect is to create a new source of revenue, likely to run into many millions of dollars annually, all of which is taken from that class of taxpayers at the bottom of the tax ladder and least able to pay additional taxes. I raise one small voice by way of protest.

Perhaps it is already too late, for the tax gatherers have moved in swiftly. Even while this very test case was *sub judice*, and on December 12, 1963, I.T. 3726 was in effect repudiated, and the

1. "Amounts distributed to employees of the M Club, a nonprofit organization, out of a Christmas Fund made up of contributions of its members for such employees and not based on services performed, constitute gifts which are not includible in the gross income of the employees nor subject to withholding under Section 1622 of the Internal Revenue Code.

"Advice is requested whether amounts distributed at Christmas time to employees of the M Club, a nonprofit membership organization, are considered income and whether such amounts are subject to withholding under Section 1622 of the Internal Revenue Code.

"The M Club requests its members each year to make voluntary contributions to a Christmas Fund for distribution to its employees. The total amount subscribed or paid into the fund by its members is distributed to employees of the organization at Christmas time. The contributions are not based on any services performed by the employees sharing in the benefits of the fund and the amount paid by each member is purely within the member's discretion. The organization does not treat the contributions as its own but keeps the fund earmarked 'for distribution to employees.' The organization merely acts as agent for the members in the disbursement of the funds to employees.

"It is held that amounts distributed to employees, under the circumstances stated, constitute gifts and are not includible in the gross income of the employees nor subject to withholding under Section 1622 of the Internal Revenue Code."

following release, TIR–527 was issued by the Service:

"The U. S. Internal Revenue Service today announced that amounts distributed by social clubs and similar membership organizations to their employees in recognition of services are includible in the gross income of the recipients. Many such organizations make up funds from voluntary contributions or assessments against the members of the clubs which funds are distributed to employees of the club.

"The amounts distributed by the clubs to their employees constitute wages subject to withholding for income tax purposes.

"Internal Revenue stated that I.T. 3726, C.B. 1945, 63, is distinguished from the circumstances described above. I.T. 3726 discusses the relatively narrow circumstances in which it can be established that Christmas distributions are gifts and not paid in recognition of any services." 7 CCH 1964 Stand.Fed. Tax Rep. ¶6327.

The effect no doubt has been that the clubs have capitulated and there has already been widespread withholding, with what effect upon the thousands of club employees can readily be imagined. It was scarcely to be expected that club managements would do otherwise, when faced with the probability of tax claims running back as far as the applicable Statute of Limitations would permit, with the usual interest and penalties. The whole sorry business is shocking to me.

Nor is the fundamental character of these gifts affected by the inept wording of the resolution and the notices in this particular case. In all these private clubs tipping is not allowed, and the Christmas Funds are always distributed with an eye to the annual compensation and the years of service of the various club employees. It would be strange indeed if such gifts were made without any thought of apprecia-

tion for good work in the past. If this test case stands unreversed, it may be taken as established that distributions of Christmas Funds to club employees will be taxable as wages and income, no matter how the club resolutions and the notices to members are worded. Otherwise the taxability of such items would depend upon the ingenuity of tax counsel rather than upon the basic facts.

Just because no tipping is allowed, and the Christmas Fund provides club members with the only legitimate opportunity to give something to the club employees, it does not follow that these gifts are tips. Indeed, to my way of thinking they are the very antithesis of tips. Many of the employees, such as the man who mixes the salads and others working in the kitchen, the clerical force in the bookkeeping department and maintenance, never have any direct contact with the members of the club. It would never occur to a member to give tips to any of these people. The donors have no knowledge of how the money is distributed to the various individual employees; and not one of the employees has any knowledge of who the donors are or the amount of their respective Christmas gifts. Nor does the occasional use of the word "bonus" put this case in the category of year-end payments to executives of corporations by way of bonuses or additional salary. The two situations are as far apart as the poles.

As long as these cases are to be disposed of on the basis of stipulations, without any testimony of live witnesses, we are the fact-finders on review, as pointed out in the majority opinion. The controlling law is stated in Commissioner v. Duberstein, 1960, 363 U.S. 289, 80 S.Ct. 1198, 4 L.Ed.2d 1218. We are to make findings by applying our "experience with the mainsprings of human conduct to the totality of the facts" of the case. Following this rule I do not see how we can arrive at any other conclusion than to find the contributions to the Christmas Fund were gifts, and the distributions to the individual employees were not wages or income.

What disturbs me most is the assumption, lying at the base of this case, that there really is no such thing as a gift bestowed out of the goodness of one's heart and in the spirit of Christmas, but only payments of wages earned or to be earned and hypocritically called Christmas contributions. I have too much faith in my fellow man to believe that any such assumption is true.

I would reverse the decision of the Tax Court and hold the payments not to be taxable.