**UNITED STATES of America**

v.

**Thomas Paul GARRISON, an individual, Lawrence Winston Harrington, an individual, James Robert Hill, an individual, and Joseph W. Attaway, an individual.**

**Crim. No. 8422.**

United States District Court
M. D. Georgia,
Macon Division.

Feb. 17, 1967.

Floyd M. Buford, U. S. Atty., Macon, Ga., for plaintiff.

Frank O. Evans, Milledgeville, Ga., for Garrison, Harrington and Hill.

Bloch, Hall, Groover & Hawkins, Macon, Ga., James M. Watts, Jr., Milledgeville, Ga., for Attaway.

BOOTLE, Chief Judge:

This six count information charges all four defendants with violation of 21 U.S.C.A. §§ 353(b) (1) and 331(k) in the dispensation of drugs without a prescription. Count I charges Hill and Garrison with a violation on January 29, 1965. Count II charges Hill alone on February 3, 1965. Count III charges Hill and Attaway on February 3, 1965. Counts IV, V, and VI charge Harrington alone on February 8, February 24, and March 4, 1965. Both Hill and Garrison have entered pleas of guilty to all charges filed against them. There remain for trial, therefore, only Attaway upon Count III and Harrington upon Counts IV, V, and VI. Attaway has filed a motion for severance urging six grounds: (1) The only defendant jointly charged with movant is Hill who has entered a plea of guilty; (2) Movant is not alleged to have entered into a conspiracy with any of the other defendants; (3) Movant is not charged with having participated in any of the transactions in the other counts; (4) None of the other defendants, save Hill who has pleaded guilty on all counts, is alleged to have participated in the transaction with which movant is charged; (5) The transactions involved in the information are not alleged to be the same series of acts or transactions, nor are they alleged to be a series of acts or transactions; and (6) To try movant with Harrington would be prejudicial to movant.

In opposition to the motion for severance the Government has filed with the court a brief setting forth, inter alia, in verified form its expectations as to what the evidence upon the trial will disclose, and upon the basis of which verified statement the Government contends that the motion for severance should be denied, and that it is entirely proper to try Attaway and Harrington together, Attaway upon Count III and Harrington upon Counts IV, V, and VI. For convenience, this verified statement is set forth herein as a footnote.[1]

---

1. "The Government has evidence establishing that the six alleged offenses in the instant information arose out of the same series of acts and transactions. Although no conspiracy is alleged, the evidence establishes that all four named defendants were engaged in a common scheme resulting in concerted action to violate the Federal Food, Drug, and Cosmetic Act by illegally dispensing drugs without prescriptions in violation of 21 U.S.C. 331(k), and 21 U.S.C. 353(b) (1). In total, the four named defendants caused 18,500 Diphetamine tablets to be dispensed to the same government agent during a relatively short period of five weeks, between January 28, 1965 and March 5, 1965. For these tablets, the defendants were paid six hundred and fifty dollars ($650). Not only were the sales consummated within a short period of time, but the locus for all of the sales was the West End Service Station, Milledgeville, Georgia, owned and operated by the defendant Harrington. The defendant James Robert Hill is an employee of Harrington and consummated all the illegal sales in the counts in which he was named at the West End Service Station. The evidence indicating that the defendant Garrison was a 'middleman', who was supplying the defendants Harrington and Hill with the drugs for the illegal sales they personally occasioned. Circumstantial evidence and statements of the defendants indicate that Garrison was in turn being supplied from a primary source in Milledgeville, Georgia, which source the government has been unable to identify and implicate. All initial contacts for these illicit sales were made at the West End Service Station and consummated there or at other locations in the immediate vicinity of Milledgeville, Georgia, as a result of these initial contacts at the West End Service Station. Garrison supplied Hill the drugs referred to in the first count. Both Garrison and Hill have pleaded guilty to this count.

"Counts 2 and 3 both are predicated on illicit drug sales on February 3, 1965. The evidence indicates that Hill was unable to supply the agent with the drugs previously ordered, as Garrison could not contact his main supplier. As a result, Hill made a sale of a small quantity of

The outcome of this motion must be determined by the provisions of Rule 8 (b), Federal Rules of Criminal Procedure. Rule 8(a) does not concern us because it relates to joinder of *offenses* (not defendants), and permits such joinder if the offenses are of the same or similar character. These offenses are identical. Rule 8(b) reads as follows:

"JOINDER OF DEFENDANTS. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

■ Judge Dobie, writing for the Fourth Circuit in the case of Cataneo v. United States, 167 F.2d 820 (4th Cir. 1948), in construing this section, said: "the key-word here seems to be 'transaction'". There are two additional words which invite attention, namely, "alleged" and "series". *Cataneo* holds that "'transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Throwing light upon the word "transaction" (and also upon the word "participated"), the Fifth Circuit, in the case of Kivette v. United States, 230 F.2d 749, at 753 (5th Cir. 1956), cites with approval Scheve v. United States, 87 U.S.App.D.C. 289, 184 F.2d 695 (1950) as construing "participated" "as allowing joinder of all defendants engaged in a connected course of conduct out of which arose separate crimes alleged against different persons." And the Fifth Circuit continued: "It is not necessary for us to attempt a comprehensive definition of participation, however, except to note that it has a broader scope than solely performing acts rising to the level of crimes." Thus the word "transaction" itself may comprehend a series of many occurrences and is not confined in its meaning to one particular episode. Furthermore, Rule 8(b) does not even require participation by all defendants in the same broad "transaction". The requirement of the Rule is participation in the same transaction "or in the same *series* of acts or transactions." (Em-

drugs to the agent out of his existing supply. (Count 2). As the agent was interested in a further purchase, the defendant Hill met and introduced defendant Attaway to the agent at the West End Service Station. The defendant Attaway then left the station via a taxi cab and returned a short time later with a brown paper bag on his person and entered the West End Service Station. A short time later, the defendant Hill came out of the West End Service Station and sold the agent a number of Diphetamine pills which were contained in a brown paper bag. The defendants Attaway and Harrington were then observed driving away from the station together in Harrington's truck. Arrangements were then made between the agent and Hill for a return sale on February 5, 1965. The agent returned as arranged to the West End Service Station on February 5, 1965, but was advised that Hill was away on a trip. While the agent was on the premises, the defendant Attaway came into the station and asked the agent 'Didn't Jim show up with those pills?' to which the agent replied in the negative. Attaway then asked the agent, 'Were those pills I got you any good?' and when the agent replied in the affirmative, Attaway stated he knew that they were good as they came 'straight from the drug store.' The defendant Harrington was present during this conversation between the agent and Attaway and volunteered that he could supply the agent with 10,000 pills. The agent asked if he could have them by that afternoon, and Harrington informed (sic) that he would make a call. The agent then heard Harrington telephone and ask for the defendant Garrison. Harrington returned and informed the agent he could not have any pills until February 8, 1965. As a result of this contract, (sic) Harrington made three illegal sales to the agent on February 8, 1965, February 24, 1965, and March 4, 1965. The meeting place for each of these sales was Garret Way, Milledgeville, Georgia. The defendant Garrison's reported address at the time of the alleged violations was 531 Garret Way, Milledgeville, Georgia."

phasis supplied). It was held in the *Scheve* case "since the gambling and the assault were a 'series of acts or transactions' *in which series, if not in each of its members,* all four defendants 'participated', Rule 8(b) permits joinder of the defendants in one indictment." (Emphasis supplied). Moreover, all of these acts or transactions need not constitute a single offense. The requirement of the Rule is that they constitute "an offense *or offenses*." (Emphasis supplied).

■ Movant contends that the Rule's requirements with reference to participation, identity of act or transaction, or the existence of a series of acts or transactions constituting an offense or offenses must all be "alleged"; that is to say, spelled out in the information or indictment. If the courts had chosen to give a strict interpretation to the language of Rule 8 and its kindred rule 13 movant's contention would have a better chance to succeed. The courts have, however, consistently given a broad interpretation to the broad language of Rule 8. This particular point was ruled against movant's contention in the case of Griffin v. United States, 272 F.2d 801 (5th Cir. 1959), where the court held at page 802:

> "Appellants contend that whether the two offenses are based on the same act or transaction or are of the same or similar character must be gleaned from the face of the indictments; that where each indictment is complete on its face and alleges a single offense by a single defendant, the court could not legally join the two for trial with the expectation that it would later develop that they were in fact joinable. No authority is cited for this proposition. We conclude that it is not the law. If in fact the proof adduced on the trial of consolidated cases demonstrates that the two separate offenses could have been charged in a single indictment, the rule is satisfied."

*Kivette* is to the same effect, holding on page 753 of 230 F.2d:

> "If the requirement that the defendants must be alleged to have participated in the same series of acts or transactions is regarded as requiring that the same defendants must be charged in every criminal act of a series of acts or transactions, it would negate the second sentence of 8(b) allowing the omission of a defendant or defendants from any count."

It follows, of course, that a joinder can be upheld without there being any conspiracy count. Evans v. United States, 349 F.2d 653, 658 (5th Cir. 1965); United States v. Gilbar Pharmacy, Inc., 221 F.Supp. 160, 163 (S.D.N.Y.1963). *Gilbar Pharmacy* is factually quite on "all fours" with the present case. See also United States v. Harris, 211 F.2d 656 (7th Cir. 1954); Todd v. United States, 48 F.2d 530 (5th Cir. 1931); Williamson v. United States, 310 F.2d 192 (9th Cir. 1962), where the rule is stated in footnote 16 as follows: "Since in the present case the conduct upon which each of the counts is based was a part of a series of factually related transactions in which all of the defendants participated, the charges were properly joined, although the various offenses were distinct and all of the defendants were not charged in each count"; Cattaneo v. United States, supra, and Scheve v. United States, supra.

■ It is important to distinguish between proper joinder or misjoinder on the one hand and prejudicial joinder on the other. Thus far we have discussed the question of proper joinder or misjoinder which question was raised by the first five grounds of the motion. The sixth ground raises the question of prejudicial joinder and says, "to try this defendant with any of the other defendants would be prejudicial to this defendant." This court is satisfied that all four defendants were properly joined in this information and that, therefore, there is no misjoinder. Ground 6 of the motion brings into play Rule 14, Federal Rules of Criminal Procedure, which authorizes the court to grant a severance "if it appears that a defendant * * *

is prejudiced by a joinder of offenses * * *." The granting or denial of such a motion rests within the traditional discretion of the trial court. 8 Moore's Federal Practice, § 14.02 [1] (2d ed. 1966); Pointer v. United States, 151 U.S. 396, 400–404, 14 S.Ct. 410, 38 L.Ed. 208, 211–212 (1894); Corbin v. United States, 264 F. 659 (5th Cir. 1920); United States v. Lotsch, 102 F.2d 35 (2d Cir. 1939). A mere unsupported assertion of prejudice is not sufficient to justify severance of properly joined defendants. See Williamson v. United States, supra, 310 F.2d at 197. Appropriate instructions can obviate any possible confusion between the two defendants to be tried, and confine the jury's consideration to evidence produced as to each particular defendant. See Spencer v. State of Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606, January 23, 1967 and Delli Paoli v. United States, 352 U.S. 232, 242, 77 S.Ct. 294, 1 L.Ed.2d 278, 285 (1957).

Accordingly, the motion for severance must be denied, and counsel for the Government may hand up an appropriate order.