**UNITED STATES of America,**

v.

**Frank CRISONA, Anthony DeLyra, John DeLyra, Dominic C. Lonardo, John Martin Neiman and Frank Lloyd Parks, Defendants.**

**No. 67 Cr. 56.**

United States District Court
S. D. New York.
July 11, 1967.

---

19. At defendants' request, the question of a bond is postponed to the time for settlement of the order.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for United States of America, by Charles J. Fanning, Asst. U. S. Atty., New York City.

Maurice Edelbaum, New York City, for defendant Crisona.

MANSFIELD, District Judge.

Defendants have made voluminous motions seeking discovery, severance[1] and dismissal of various counts of the indictment.[2] The introduction to the indictment charges the defendants with having devised a scheme to defraud applicants for mortgage loans by means of a "shell" corporation named Colombia Resources Ltd., which was falsely represented to the victims as having large amounts of money available for such loans. The thrust of the alleged scheme was to obtain advance fee payments from the applicants and convert the money without ever consummating the loans.

The substantive counts allege that in furtherance of the foregoing scheme the defendants[3] made various interstate phone calls (18 U.S.C. §§ 2, 1343);[4] sent various letters and telegrams (18 U.S.C. §§ 2, 1341, 1343);[5] caused and induced various individuals to be transported in interstate commerce (18 U.S.C. §§ 2, 1343);[6] transported in interstate commerce various sums of money which were known to have been taken by fraud (18 U.S.C. §§ 2, 1343);[7] and conspired to do the foregoing acts (18 U. S.C. § 371).[8] In addition, defendant Neiman is charged with having used a fictitious name in furtherance of the scheme (18 U.S.C. § 1342).[9]

Motions for Severance

The defendants Crisona and Parks have moved for a severance on substantially the same ground, i. e., that the testimony of a co-defendant could exculpate them; that the co-defendant would refuse to take the stand at a joint trial; and that the only hope of obtaining the needed testimony would be in a separate trial. Lonardo has submitted a statement to the effect that Parks would testify on Lonardo's behalf at a separate trial but not at a joint trial. Crisona has stated in an affidavit that defendant Neiman told him he would not testify for him at a joint trial but that he did have testimony that could demonstrate Crisona's innocence.

As a general rule persons joined in the same indictment should be tried together, at least where a substantial amount of the evidence to be offered at trial will be the same as to all defendants. United States v. Lebron, 222 F.2d 531, 535 (2d Cir.), cert. denied, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed 774 (1955); United States v. Cohen, 124

---

1. Only defendants Crisona, Lonardo and Parks have moved for a severance.

2. Only defendants Lonardo and Crisona have moved to dismiss the indictment.

3. Defendant Neiman is named in all 30 counts; defendant Lonardo is named in 21 counts. The remaining defendants are named in all but the 25th count.

4. Counts 1, 2, 4, 5, 7, 9, 13, 16, 18, 20 and 23.

5. Counts 3, 10, 11, 17, 21, 22 and 24.

6. Counts 6, 8, 12, 14, 15, 19 and 29.

7. Counts 26, 27 and 28.

8. Count 30.

9. Count 25.

F.2d 164, 165–166 (2d Cir. 1941), cert. denied, 315 U.S. 811, 62 S.Ct. 796, 86 L.Ed. 1210 (1942); United States v. Kahaner, 203 F.Supp. 78, 81 (S.D.N.Y. 1962); United States v. Berman, 24 F.R.D. 26, 29 (S.D.N.Y.1959). In the absence of a showing that he will be unable to obtain a fair trial in a joint proceeding, a defendant's desire for a separate trial must yield to the public interest in avoiding unnecessary duplication and expense and in utilizing available facilities and personnel to best advantage toward assuring speedy trials for all of those accused. United States v. Kahaner, supra; United States v. Berman, supra.

■ The decision as to whether or not a severance should be granted is therefore left to the discretion of the trial court, Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); United States v. Aviles, 274 F.2d 179, 194 (2d Cir.), cert. denied, Evola v. United States, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960); United States v. Lebron, supra; and the burden is upon a moving defendant to come forward with facts demonstrating that he will be so severely prejudiced by a joint trial that it would in effect deny him a fair trial altogether. United States v. Haim, 218 F.Supp. 922, 931 (S.D.N.Y.1963); United States v. Van Allen, 28 F.R.D. 329, 338 (S.D.N.Y. 1961). Here the moving defendants fail to sustain that burden. No facts are furnished as to the nature, extent and importance of the "exculpatory" testimony that would be offered by Parks on behalf of Lonardo, or by Neiman on behalf of Crisona, in separate trials. The result is that we are left entirely to speculation with respect to the all-important question of whether their testimony would in fact be significant enough to warrant separate trials and to render a joint trial unfair, after taking into consideration the complicated nature of the charges and proof and the protracted additional trials that would be required. The moving parties would also dictate that the Court accept their bald conclu-

sory statement of prejudice even though they may not yet have heard or seen all of the proof to be offered by the Government at trial. Furthermore, we are asked to accept statements that Parks and Neiman (who is represented to be a person possessed "of a very lengthy criminal record involving fraud and including at least ten convictions in federal and state jurisdictions") would give testimony helpful to Lonardo and Crisona, respectively, in separate trials without even the benefit of direct statements to such effect under oath from Parks and Neiman themselves.

Quite aside from the speculative nature of any testimony that might be offered by co-defendants in separate trials, there is the fact that both Neiman and Parks, even though they presently are of the view that they could give helpful testimony in separate trials, are free to change their minds overnight. For instance, it is obvious that if a severance were granted, and if the defendants with the "exculpatory" testimony were tried last, they might balk at putting themselves on record in their co-defendant's case before they are tried. It would be an unwise rule indeed that would require the Court, upon the mere say-so of a co-defendant, unsupported by factual proof and revocable at will, to grant a severance. Without implying that any of the parties here are motivated by improper considerations, such a rule would put the machinery of justice at the mercy of the unscrupulous, who would be free to play fast and loose with the Court, unrestricted by any definite standards.

■ As against the wholly speculative nature of the prejudice suggested by Lonardo and Crisona, there is the undisputed fact that if this case goes to trial, the proceeding will be a protracted one, involving relatively complicated proof and numerous witnesses, with the result that if the severance requested were granted, the expense, delay and difficulty would be enormously increased. In the absence of any facts establishing that the defendants would in fact suffer

any prejudice at a joint trial, a severance would not therefore be justified at this stage of the proceedings. If at a joint trial the possibilities suggested by the moving parties do transpire, the trial court will be in a better position to determine whether any prejudice results and, if so, whether a fair trial can be assured through instructions to the jury, see United States v. Aviles, 274 F.2d 179, 194 (2d Cir.), cert. denied, Evola v. United States, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960); United States v. Bozza, 365 F.2d 206 (2d Cir. 1966), or only through a severance. United States v. Berman, supra.

United States v. Echeles, 352 F.2d 892 (7th Cir. 1965), and United States v. Gleason, 259 F.Supp. 282 (S.D.N.Y. 1956),[10] which are relied upon by Lonardo and Crisona, presented circumstances significantly different from those here. In each of those cases a co-defendant had made an exculpatory statement helpful to the moving defendant. The statement was acknowledged to exist and to be exculpatory (in *Echeles* it was before the court), and it had been made under circumstances where there had been no motive to fabricate or to create it for the purpose of obtaining a severance. Furthermore the time and expense involved in separate trials was relatively insignificant, in contrast to a trial here expected to last over one month. In short, the courts in *Echeles* and *Gleason* were afforded indisputable facts enabling them to evaluate the necessity for a severance to achieve justice, which are not presented here.

▆▆ Equally speculative is the motion of the defendant Parks for a severance based on the possibility suggested by his attorney that the Government may offer a statement given by Lonardo to the FBI which may contain statements incriminating Parks. There is no assurance that the statement (assuming it exists) does in fact incriminate Parks or that if it does it will be offered or used by the Government at a joint trial. Furthermore, even if the Government did seek to introduce the statement and it did tend to incriminate Parks, this would not *ipso facto* give rise to grounds for a severance. Opper v. United States, supra; United States v. Aviles, supra; United States v. Delli Paoli, 229 F.2d 319, 321 (2d Cir.), affd., 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1956); United States v. Bozza, supra. In any event, the trial court will be in a far better position than this Court to evaluate the effect of such a statement in the light of circumstances obtaining at the time of trial.

▆ Crisona's contention that he is entitled to a severance for the reason that he is innocent of any wrongdoing and will be prejudiced in a joint trial by his being associated with Neiman, must be rejected not only for the reasons set forth above but because it is sharply disputed by the Government, which asserts that it will prove that Crisona played an integral part in the alleged scheme to defraud, that he was well aware of Neiman's alias, and that he knowingly lent his services to inducing the victims to part with money.

Motions for Bills of Particulars

▆ All defendants have moved for extensive particulars, the propriety of which will hereinafter be decided in accordance with the fundamental principles that follow. The purpose of a bill of particulars is to minimize surprise at trial and to permit the defendant to plead double jeopardy in the event of a subsequent prosecution against him for the same offense. E. g., United States v. Klein, 124 F.Supp. 476 (S.D.N.Y. 1954). Bills of particulars should not be utilized for the purpose of compelling the Government to disclose prior to trial its evidence, its theory or its witnesses, United States v. Rosenberg, 10 F.R.D. 521 (S.D.N.Y.1950); United States v. Lebron, supra; United States v. Kahaner, supra, nor should the purpose be

---

10. See also United States v. Kahn, 366 F.2d 259 (2d Cir.), cert. denied 385 U.S. 948, 87 S. Ct. 324, 17 L.Ed.2d 226 (1966).

to preclude the Government from utilizing proof it may develop as trial approaches. United States v. Malinsky, 19 F.R.D. 426 (S.D.N.Y.1956). On the other hand, a defendant should not be deprived of information which he must have in order to prepare a defense to the charges against him solely because of the fact that he seeks information which might be used by the Government as evidence. United States v. Cimino, 31 F.R.D. 277 (S.D. N.Y.1962). In short it is necessary to strike an equitable balance—a balance that safeguards the defendant's rights and gives effect to the recent liberalization of the Federal Rules of Criminal Procedure with respect to bills of particulars, but also protects against possible intimidation of prospective Government witnesses and minimizes the danger of perjury at trial.

A. *Motion of Defendant Crisona* [11]

The scheme to defraud which is the subject of the indictment is already set forth in considerable detail in the "Introduction" which describes its general nature, the names of numerous intended victims (Par. 1), the false representations (Pars. 2, 3, 8 and 9), and the method to be used to carry out the scheme (Pars. 3–7). The "Introduction" is in turn incorporated by reference in all counts of the 30-count indictment, except Counts 26–29 inclusive.

 Although the Government is required only to show the existence of the alleged scheme, Crisona's motion for the most part requests evidentiary details as to how the scheme was actually carried out, such as the date and place of each false representation actually made, persons by and to whom it was made, and similar details. In view of the fact that the Introduction apprises the defendants in considerable detail of the charges which they must prepare to meet at trial, such evidence need not be supplied. For instance, it is well established that the Government need not furnish the date, place or circumstances under which a defendant joined an alleged conspiracy or scheme to defraud, which is requested by Crisona in Items 1(g) and 30(a). United States v. Kahaner, supra; United States v. Bentvena, 193 F.Supp. 485, 500 (S.D.N.Y. 1960); United States v. Malinsky, supra. Nor is Crisona entitled to particulars requested with respect to counts in which Crisona is not named as a defendant, such as Count 25. The Government is, however, directed to furnish the defendant Crisona with the following particulars in addition to those which it has already agreed to furnish:

(i) With respect to Paragraph 1 of the "Introduction", the names of any and all persons, in addition to those already named, known to the Government as persons to whom false and fraudulent representations and promises were to be made, or were made, as part of the alleged scheme to defraud;

(ii) With respect to each count alleging the transmittal of a telephone call, telegram, or letter in furtherance of the alleged scheme to defraud, the identity of the person or persons who made the telephone call or sent the telegram and letter, the identity of the person or persons, or the number to which, the telephone call was made, the identity of the addressee of the telegram or letter, and a copy of each such letter and of the telegram referred to in Count 11;

(iii) With respect to Counts 26–28 inclusive, the identity of the defendant or individuals claimed to have transported the stolen, converted, or fraudulently obtained money in interstate commerce.

In all other respects Crisona's motion is denied.

---

[11]. The Government has agreed "to furnish each of the defendants with a bill of particulars stating the name of the person who it is alleged either originated a telephone call, mailed a letter or sent a telegram, and in addition, will identify the person or persons to be defrauded to which each count of the indictment relates, with the exception of Count Twenty-Five and the conspiracy count, Count Thirty."

B. *Motions of Defendants Anthony DeLyra, John DeLyra and John Neiman*

The Government is directed to furnish to the above defendants all particulars requested by them which were ordered to be furnished to Crisona. The Government further shall provide these defendants with:

(i) The exact or approximate time of each allegedly illegal telephone call and, if known to the Government, the substance of any false representations, if any, made in such calls. See generally, United States v. Bentvena, supra;

(ii) With respect to counts charging that defendants knowingly transported or caused to be transported in interstate commerce sums of money obtained by fraud, the means of transportation employed;

(iii) A copy of the allegedly illegal telegram which constitutes the subject matter of Count 21.

In all other respects the motions are denied.

C. *Motion of Defendant Lonardo* [12]

The Government shall furnish the above defendant with the particulars requested by him which have been ordered to be furnished to the other defendants.[13] With respect to the meeting in Cleveland, Ohio, which is alleged as an overt act in the conspiracy count (Count 30) of the indictment, the Government shall specify the place and purpose of the meeting.

In all other respects Lonardo's motion is denied for the reason that his requests assume facts which this Court cannot assume [14] and for the further reason that they seek purely evidentiary matter.

MOTIONS FOR DISCOVERY
UNDER RULE 16(a),
F.R.CRIM.P.

Defendants Anthony DeLyra, John DeLyra and John Martin Neiman, have moved pursuant to Rule 16(a) (1), F.R. Crim.P., for production of "any tape recordings and transcriptions of tape recordings of any statements or conversations including the defendant's with respect to the allegations of the Indictment herein."

To the extent that this motion seeks statements made prior to or at the time of the offense, the Government advises that it knows of no such statements.[15] For the reasons set forth in United States v. Louis Carreau, Inc., D.C., 42 F.R.D. 408 (June 30, 1967), the motion is denied as to all other requested statements or confessions, in the absence of a showing of any reasons or cause for their production. In the event, however, that the Government proposes to offer any such statements as part of its direct case-in-chief at trial, it shall, at least one week prior to trial, furnish a copy of each such statement to the defendant against whom it is to be offered at trial.

12. Defendant Lonardo has also moved to compel the Government to disclose whether it used wiretaps of other similar devices to illegally develop its case. Since the Government has undertaken an investigation of the matter and will report to the Court concerning any possible illegality stemming from the use of such instruments, no action is being taken by the Court with respect to the motion at this time.

13. The only request that possibly could fall in this category is No 16.

14. An example should suffice. Request No. 3 reads as follows:
"How on or about the 14th day of December, 1965 did Dominic Lonardo have anything to do with the submitting by manner of interstate wire a telephone call from Boston, Massachusetts to New York, New York, when the government knows that Mr. Lonardo was not even aware of such call."

15. In any event, it is doubtful that such utterances or conversations would constitute "statements" or "confessions" within the meaning of Rule 16(a) (1). See United States v. Fox, 65 Cr. 66, (March 21, 1967).

## MOTIONS FOR DISCOVERY UNDER RULE 16(b), F.R.CRIM.P.

### A. Motions of Defendants Anthony De-Lyra, John DeLyra and John Neiman

 The Government has consented to furnish the above defendants with copies of a large number of documents seized in November 1966 from premises occupied by defendant John DeLyra. It is unclear whether the other items demanded by the defendants were seized pursuant to the foregoing search. At any rate, the request with which the Government will not comply constitutes a shotgun fishing expedition for evidence and is completely unsupported by any showing of materiality or of reasonableness.[16] Rule 16(b), F.R.Crim.P. Accordingly, the motion is denied.

### B. Motion of Defendant Crisona

 The above defendant moves for production of all documents which the Government has consented to provide to the defendants DeLyra and Neiman. Although the Government opposes on the ground that the documents were not taken from Crisona, did not belong to him, and there has been no showing of materiality as to him, the fact that the Government is voluntarily furnishing these documents to the DeLyras and Neiman renders it anomalous to take the opposite position with respect to Crisona. Insofar as the Government's contention is based on Crisona's lack of any proprietary interest in the documents, the test under Rule 16, F.R.Crim.P. as amended, is materiality and reasonableness rather than proprietary interest. Accordingly,

the Government is ordered to furnish the documents to Crisona for inspection and copying.

### C. Motion of Defendant Parks

 Parks seeks a copy of "a certain enginering and/or financial evaluation of the assets of Colombia Resources, Ltd." for the reason that the report may have been used by certain defendants to represent the financial condition of the corporation and, indeed, may have been used to induce Parks to accept employment with the corporation. On oral argument Mr. Fanning, the Assistant United States Attorney in charge of the case, represented that the only such document the Government had in its possession was a Dun & Bradstreet report which allegedly was procured by Colombia Resources, Ltd. by means of submission of false information to Dun & Bradstreet. The motion is granted with respect to this document.

## MOTIONS TO DISMISS

### A. Defendant Crisona

Crisona asks this Court to examine the minutes of the Grand Jury; to determine whether there was sufficient evidence to support the Grand Jury's indictment with respect to the counts charging that defendants, in furtherance of their scheme, induced individuals to travel in interstate commerce (18 U.S.C. §§ 2, 2314), and, if not, to dismiss the indictment as to those counts.

Crisona's motion rests on an assumption as to the law and a speculation as to the facts that will be proved at trial. His legal assumption is that § 2314 is limited to proscribing a victim's being

---

16. The request, which was not the subject of a motion, is set forth in a "Schedule A" annexed to the said defendants' "Memorandum of Law" as follows: "Any correspondence, memoranda, wires, agreements, reports of meetings, or other writings with relation to Colombia Resources, Ltd., dealings with Sidney Kline, Finance-Elger Corporation, A. Earl Brown, Sunrise Mountain Corporation, Julian Tuller, clinton [sic] Mall Corporation, Roy Menlove, Investors Cooperative, Inc.,

Lambert N. DePompei, The Lamb Medical Corporation, Joseph S. Fazio, VIP Motor Lodge, Inc., Howard Rome, Delta Plastics Corporation, Morgan-Peacock Management Corporation, Harold A. Bowers, Harry McLord, Rigerview Realty Corp., [sic] Donald J. Barley, North Allegheny Investment, Inc., H. David Hilliard, R. J. Atkins, Lincoln Trail Farm Development Corp., and Victor Marianno."

induced to travel in interstate commerce either to obtain the funds necessary to pay a confidence man or to realize the promised proceeds of a deal in which he is defrauded. Having made this assumption, he contends (without having seen them) that the Grand Jury minutes will demonstrate that such facts were not adduced before the Grand Jury and will not be proved by the Government at trial.

 Without expressing any view as to the legal question presented by Crisona, even if we were to accept his interpretation of the statute, this Court is not required merely on the defendant's unsupported speculation to embark upon a time-consuming pretrial excursion for the purpose of determining whether the Grand Jury had sufficient evidence before it to find probable cause to file the indictment. An indictment returned by a legally constituted grand jury is sufficient to call for a trial on the merits. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); United States v. Ramsey, 315 F.2d 199 (2d Cir.), cert. denied, 375 U.S. 883, 84 S.Ct. 153, 11 L.Ed.2d 113 (1963). Defendant Crisona's rights will be fully protected at that trial.

B. *Defendant Lonardo*

Lonardo moves to dismiss the indictment on the grounds that: (1) it is vague; (2) it is duplicative; and (3) it joins certain crimes committed by the defendants "independently of each other."

 With respect to Item No. 1, an indictment is sufficient if it advises the defendant of the accusation in such a way that he can meet it and if it enables him to plead double jeopardy in the event of a subsequent prosecution for the same offense. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927). Within the context of this test, the indictment in this case is entirely sufficient in all respects.

The Court is left entirely in the dark as to the basis of Lonardo's assertion of duplicity, his motion being limited to the statement "Each of said counts is duplicitous and, therefore, void", without specifying any reasons. Since a perusal of the indictment does not reveal any duplicity of any kind, this ground must be rejected.

 The argument that the indictment should be dismissed because defendant Lonardo was not named in all counts is frivolous, since he is charged with participation in a series of acts or transactions constituting the offenses alleged. Rule 8(b), F.R.Crim.P.

So ordered.