**UNITED STATES of America,**
**Plaintiff,**

v.

**Nathan WOLFSON, William F. Emmons, Albert Frost, James B. Thompson and Edward Fishbein, Defendants.**

**Crim. A. No. 1909.**

United States District Court
D. Delaware.

Nov. 15, 1968.

Alexander Greenfeld, U. S. Atty., and L. Vincent Ramunno, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Donald C. Taylor, Wilmington, Del., for defendant, Nathan Wolfson.

William D. Bailey, Jr., Wilmington, Del., for defendant, William F. Emmons.

Noah L. Braunstein, New York City, for defendant, Albert Frost.

William T. Lynam, III, Wilmington, Del., for defendant, James B. Thompson.

Thomas C. Troy, Boston, Mass., for defendant, Edward Fishbein.

## OPINION

LATCHUM, District Judge.

On June 7, 1968 the Grand Jury for this District returned a twenty-nine

count indictment against Nathan Wolfson, William F. Emmons, Albert Frost, James B. Thompson and Edward Fishbein. The first count charged all five defendants with a conspiracy to violate the mail fraud statute, 18 U.S.C. § 1341. Counts two through twenty-nine charged the defendants with various substantive violations of the mail fraud statute.[1] Following the indictment, defendants filed a virtual flood of pre-trial motions —some twenty-five in number—which were subsequently consolidated for the purposes of briefing and argument. Since many of the motions are similar in nature, although in some instances based on different grounds, they will be considered under the general headings to follow.

I. *Inspection Of Grand Jury Minutes*

Defendants, Wolfson, Emmons, Frost and Fishbein, have moved for the production and inspection of the minutes of the grand jury proceedings which led to the indictment. Emmons desires that the Court make the inspection while the others wish to make their own examination. All of the motions are based generally upon the *possibility* that the Grand Jury may have considered either incompetent or illegal evidence or both.

■ Under Rule 6(e) of the F.R. Cr.P., disclosure of grand jury proceedings to someone other than a government attorney is authorized "only when so directed by the court preliminarily to or in connection with a judicial proceeding or * * * at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." But since the proceedings before the grand jury have been traditionally guarded in secrecy, the defendant must sustain the burden of showing a "particularized need" before the veil of secrecy will be lifted "dis-creetly and limitedly." Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) ; Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959) ; United States v. Procter & Gamble Co., 356 U.S. 677, 683, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) ; United States v. Jaskiewicz, 272 F.Supp. 214 (E.D.Pa., 1967).

■ In the light of these principles, I think defendants have not made the required showing of "particularized need" in this case. Wolfson and Emmons [2] contend *on information and belief* that their depositions, taken in a related civil action in a State court, may *possibly* have been presented without their consent to the Grand Jury and that evidence obtained as a result of an illegal search and seizure may also have been considered. Hence, they argue that if the examination revealed this to be so then their Fifth Amendment privilege against self-incrimination and their Fourth Amendment right against unlawful searches and seizures were violated. Defendant Frost also specifically moved to inspect for the purpose of ascertaining whether the indictment was procured by the use of evidence illegally seized, whether the testimony before the grand jury concerning him was based on hearsay, surmise or conjecture and whether the testimony was of sufficient legal value to charge him with any offense.

■ The "particularized need" for the inspection of grand jury proceedings, either by the Court or the defendants, must be based on something more than mere speculation on the part of the defendants. The present motions are all bottomed on *information and belief* and the "mere assertion" that the *possibility* exists that illegal or incompetent evidence was considered by the Grand Jury.

---

1. In Counts 2 through 29, Wolfson was charged with 22 substantive violations of the mail fraud statute, Emmons with 20 violations, Frost with 16 violations, Thompson with 19 violations and Fishbein with 9 violations.

2. Defendant Fishbein made no formal motion but requested in his motion for a Bill of Particulars that he be furnished a copy of the grand jury transcript. No reasons were given for this request.

In my view this is not a sufficient showing to impel the Court to exercise its discretion to open the grand jury records so that the defendants may verify a "hunch" that the indictment is unsupported by any competent evidence. United States v. Papaioanu, 10 F.R.D. 517 (D.C.Del., 1950). Such requests, based on surmise and conjecture, are not sufficient to overcome the presumption that the Grand Jury acted on sufficient evidence. United States v. Weber, 197 F.2d 237 (C.A. 2, 1952).

Finding that the defendants have not made a sufficient showing to move the Court, in the exercise of its discretion, to order disclosure of the proceedings before the Grand Jury, the defendants' motions will be denied.

## II. *Motions To Dismiss*

Defendants, Wolfson, Emmons and Fishbein, have moved to dismiss the conspiracy charge on the ground of duplicity. They contend that the first count improperly joins two separate and distinct substantive offenses, viz., a violation of 18 U.S.C. § 371 and 18 U.S.C. § 1341, contrary to Rule 8(a), F.R.Cr.P. which requires that "there be a separate count for each offense."

 In my opinion, however, the defendants' contention is wholly without merit. A fair reading of Count one indicates that the gist of the offense charged is a conspiracy under 18 U.S.C. § 371. It states that the defendants "did unlawfully, wilfully and knowingly *conspire*, confederate and agree together * * * to commit an offense against the United States, that is to say, to use the mails * * * in furtherance of a scheme * * * to defraud * * * in violation of Title 18 United States Code, Section 1341 * * *." The count is not duplicitous when it contains allegations of the objects of the conspiracy, i. e. mail fraud violations, because it is well settled that a conspiracy, no matter how diverse its objects, is but one offense. Frohwerk v. United States, 249 U.S. 204, 210, 39 S.Ct. 249, 63 L.Ed. 561 (1919); Reno v. United States, 317 F.2d

499, 502 (C.A.5, 1963) cert. den. 375 U.S. 828, 84 S.Ct. 72, 11 L.Ed.2d 60; United States v. Boisvert, 187 F.Supp. 781, 784 (D.C.R.I., 1960). While it is true that 18 U.S.C. § 371 was not expressly referred to in Count one, the indictment was laid in the language of the conspiracy statute which is all that is required. United States v. Debrow, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953). Moreover, the omission of the citation of the conspiracy statute does not provide grounds for its dismissal when the omission has not misled the defendants to their prejudice, Rule 7(c), F.R.Cr.P. No contention or showing has been made of any prejudice, but, on the contrary, defendants' motions clearly show that they recognize that they were charged with a *conspiracy* under 18 U.S.C. § 371.

 Defendant Fishbein also points out that at the end of the first paragraph of Count one the words "in violation of Title 18 United States Code, Section 1341" appear. From this he argues that the conspiracy statute prohibits conspiracies "to violate" and that the indictment using the alternate phrase "in violation of" is fatally defective. I cannot agree. The sufficiency of an indictment is determined by practical rather than technical considerations. Williamson v. United States, 310 F.2d 192, 195–196 (C.A. 9, 1962). The test is not whether it could not have been more artfully and precisely drawn, Scott v. United States, 231 F.Supp. 360, 363 (D.C. N.J., 1964), aff'd 342 F.2d 813 (C.A. 3, 1965), but rather its adequacy is measured by whether it contains the elements of the offense intended to be charged, whether it sufficiently apprises the defendant of what he must be prepared to meet, and in the event that subsequent proceedings are brought against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. United States v. Krepper, 159 F.2d 958, 968 (C.A. 3, 1946), cert. den. 330 U.S. 824, 67 S.Ct. 865, 91 L.Ed. 1275. Count one meets this test.

Defendants, Wolfson and Emmons, also moved to dismiss the entire indictment for the reason that their depositions, taken in civil actions pending in a State court, or information obtained therefrom, were *possibly* supplied to the Grand Jury without their consent in violation of their privilege against self-incrimination which is protected by the Fifth Amendment of the United States Constitution.

There is no record before this Court of the nature of the depositions taken, whether the disclosures made therein were in fact incriminating, or whether the depositions or information taken therefrom were laid before the Grand Jury. The whole matter is based completely upon conjecture and no authority has been cited to support the proposition advanced. But assuming the depositions were so used, it does not follow that defendants' privilege against self-incrimination was violated.

 Defendants' Fifth Amendment privilege could have and should have been invoked at the time their civil depositions were taken if the defendants were reasonably apprehensive that their disclosures could be used in a criminal prosecution or could lead to evidence that might be so used. In re Gault, 387 U.S. 1, 47–48, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), quoting Murphy v. Waterfront Comm'n of New York Harbor, 378 U.S. 52, 94, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (White, J., concurring); Malloy v. Hogan, 378 U.S. 1, 3, 11–12, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1963), quoting Hoffman v. United States, 341 U.S. 479, 486–487, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). When the defendants proceeded to give their depositions without then claiming the privilege they thereby waived the protection of the privilege against self-incrimination. Brown v. United States, 356 U.S. 148, 154–156, 78 S.Ct. 622, 2 L.Ed.2d 589, 72 A.L.R.2d 818 (1958); Sears, Roebuck & Co. v. American Plumbing & Supply Co., 19 F.R.D. 329, 332 (E.D.Wisc., 1954). Moreover, when the depositions were filed in the State court civil proceedings, they became public records to which the Fifth Amendment privilege did not apply. Wilson v. United States, 221 U.S. 361, 380, 31 S.Ct. 538, 55 L.Ed. 771 (1911).

 Furthermore, as will be shown later, the use of illegal or tainted evidence in a grand jury proceeding does not afford a basis for dismissal of an indictment and *a fortiori* does not afford a sufficient basis for a motion to inspect a grand jury record for the purpose of determining whether such evidence was in fact considered.

Wolfson, Emmons and Frost also contend that the indictment should be dismissed because evidence procured as a result of an allegedly illegal search and seizure may *possibly* have been presented to the Grand Jury in violation of their Fourth Amendment rights against unlawful seizures. In addition, Frost claims the indictment should be dismissed as to him because it is *possible* that testimony before the Grand Jury concerning him was based on incompetent hearsay evidence.

 Aside from the purely speculative nature of the basis for these motions, and assuming incompetent hearsay evidence and illegally obtained evidence in violation of the Fourth and Fifth Amendments was considered by the Grand Jury, it does not follow that a valid basis exists for dismissing the indictment. The nature and function of a grand jury, unlike adversary proceedings, contemplates that it will hear evidence from many sources uninhibited by the strict rules of evidence applicable in a trial and untested by the traditional adversary tools such as cross-examination. Coppedge v. United States, 114 U.S.App.D.C. 79, 311 F.2d 128, 132 (C.A. 2, 1962), cert. den., 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701. An indictment returned by a legally constituted grand jury, "if valid on its face, is enough to call for a trial of the charge on the merits and satisfies the requirements of the Fifth Amendment." Lawn v. United States, 355 U.S. 339, 349, 78

S.Ct. 311, 317, 2 L.Ed.2d 321 (1958). Nor are indictments open to challenge on the ground they are not supported by adequate or competent evidence even when all the evidence was hearsay since "neither the Fifth Amendment nor any other Constitutional provision prescribes the kind of evidence upon which grand juries must act." Costello v. United States, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956); Holt v. United States, 218 U.S. 245, 248, 31 S. Ct. 2, 54 L.Ed. 1021 (1910). Moreover, the law is well settled that a prosecution will not be abated or barred even where tainted evidence unconstitutionally obtained has been submitted to the Grand Jury. United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); United States ex rel. Almeida v. Rundle, 383 F.2d 421, 424 (C.A. 3, 1967); United States v. American Radiator & Standard Sanitary Corp., 278 F. Supp. 608, 610 (W.D.Pa., 1967); United States v. Margeson, 259 F.Supp. 256, 273–274 (E.D.Pa., 1966).

Defendant Emmons also claims that pre-trial publicity has prejudiced his right to a fair trial and urges dismissal of the complaint. He points to a newspaper account appearing in a morning and an evening newspaper published in Wilmington following the presentment of the indictment. In those accounts the Assistant United States Attorney was allegedly quoted as estimating the amount of unpaid insurance claims (which defendants are charged in the indictment with having had no intention of paying) at $250,000. Emmons contends that the amount of defaulted insurance claims does not appear in the indictment, that such a statement was purely gratuitous and unjustified and highly prejudicial to a fair trial. The case of Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) is cited in support of this contention.

 But, there is absolutely no comparison between the two situations. Sheppard involved "massive and pervasive" press coverage (pp. 353–354, 86 S.Ct. 1507), "bedlam reigned in the courthouse during the trial and newsmen took over practically the entire courtroom, hounding most of the participants in the trial" (p. 355, p. 1518 of 86 S.Ct.), "the news media inflamed and prejudiced the public" (p. 356, p. 1519 of 86 S.Ct.), and the trial judge failed "to protect Sheppard from the inherently prejudicial publicity which saturated the community and to control disruptive influences in the courtroom." (p. 363, p. 1522 of 86 S.Ct.). The news article appearing in the two newspapers dealing with the indictment returned in this case and the gratuitous quote of the Assistant United States Attorney estimating the amount of money involved in the alleged mail fraud can hardly be said to come within the broadest reading of Sheppard. Furthermore, regardless of whether or not the government's comments to the press were justified, such publicity cannot constitute grounds for the dismissal of the indictment when the amount of the publicity was very small compared with the body of the news material relating to the indictment into which it was injected and it was not "widely, prominently or frequently held up to the public over a substantial period of time." United States v. Zovluck, 274 F.Supp. 385, 389 (S.D.N.Y., 1967). And, the voir dire should be an adequate safeguard in this case for it can be used to determine whether the pre-trial publicity has so prejudiced the community as to prevent the selection of a fair and impartial jury. United States v. Suchman, 206 F.Supp. 688, 691 (D.C.Md., 1962); United States v. Hoffa, 156 F.Supp. 495, 500 (S.D.N.Y., 1957).

 Finally, defendant Thompson moved to dismiss the indictment on the ground that he was subpoenaed and testified before the Grand Jury which indicted him and that when he appeared to testify he was given no warning of his right to counsel or his right to remain silent, all in violation of his Fifth Amendment and Sixth Amendment rights. Defendant relies on the case of United States v. DiGrazia, 213 F.Supp. 232, 234 (N.D.Ill., 1963), aff'd on other

<br />

grounds sub nom. United States v. DiFronzo, 345 F.2d 383 (C.A. 7, 1965). However, the record before me makes it apparent that Thompson was subpoenaed as a *witness* to bring before the Grand Jury certain corporate records of which he had custody. He was not a defendant at that time. In this situation, the law of this circuit is clear that a "grand jury witness", which is all that Thompson was, "is not entitled to a warning of right to counsel and to remain silent", United States v. DiMichele, 375 F.2d 959 (C.A. 3, 1967) cert. den. 389 U.S. 838, 88 S.Ct. 54, 19 L.Ed.2d 100; United States v. Ponti, 257 F.Supp. 925 (E.D. Pa., 1966); United States v. Miller, 80 F.Supp. 979 (E.D.Pa., 1948), and this appears to be the majority view. United States v. Orta, 253 F.2d 312 (C.A. 5, 1958), cert. den. 357 U.S. 905, 78 S.Ct. 1149, 2 L.Ed.2d 1156; United States v. Parker, 244 F.2d 943, 949 (C.A. 7, 1957), cert. den. 355 U.S. 836, 78 S.Ct. 61, 2 L.Ed.2d 48; United States v. Scully, 225 F.2d 113, 116 (C.A. 2, 1955), cert. den. 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788. In any event, assuming that the Grand Jury acquired incriminating evidence from Thompson in violation of the Fifth Amendment, this does not mean that the indictment should be dismissed. At most he would be entitled to suppress the evidence and its fruits if they were sought to be used at trial; it would not bar the prosecution altogether. United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); United States v. Andreadis, 234 F.Supp. 341, 344 (E.D.N.Y., 1964).

Defendant's motions to dismiss Count one of the indictment and the entire indictment will be denied.

### III. *Motions For Severance*

Defendants[3] have moved under Rule 14, F.R.Cr.P., for a severance of the counts of the indictment for separate trial and severance of defendants. No contention is made that either the offenses or the defendants were improperly joined under Rule 8, F.R.Cr.P. They simply say that the joinder, otherwise proper, will result in prejudice for which the court, in its discretion, should afford relief under Rule 14.

However, when a joinder is permissible under Rule 8, separate trials should not be granted in the absence of strong and cogent reasons for a severance. Dowdy v. United States, 46 F.2d 417, 421 (C.A. 4, 1931). Joint trials of those properly indicted together are favored since "[they] conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." Bruton v. United States, 391 U.S. 123, 134, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968). This is particularly true of conspiracy cases, Davenport v. United States, 260 F.2d 591, 594 (C.A. 9, 1958), cert. den. 359 U.S. 909, 79 S.Ct. 585, 3 L.Ed.2d 573, where the offenses grew out of the same series of transactions. Milam v. United States, 322 F.2d 104, 110 (C.A. 5, 1963), cert. den. Kimball v. United States, 377 U.S. 911, 84 S.Ct. 1174, 12 L.Ed.2d 181.

The instant motions are based on a variety of grounds. First, defendants contend that a joint trial of the five defendants charged in an indictment containing twenty-nine counts will cause confusion in the jurors' minds and create difficulty in sifting the evidence. But a large number of defendants and offenses combined in one indictment is not necessarily grounds for a severance. Butler v. United States, 317 F.2d 249, 264, 6 A.L.R.3d 582 (C.A. 8, 1963), cert. den., Benedec v. United States, 375 U.S. 836, 84 S.Ct. 67, 11 L. Ed.2d 65. This is particularly so in the present case where the defendants are all charged with having participated in the same series of acts and transactions constituting the offenses and where the proof of the charges is largely depend-

3. Wolfson, Emmons and Frost moved for an order requiring the Government to elect to proceed on the conspiracy count and the substantive counts in separate trials. All defendants, except Thompson, moved for a severance of the defendants.

ent upon the same evidence. In these circumstances, possible jury confusion can always be brought to the trial court's attention and appropriate instructions given to obviate any confusion that may result. United States v. Garrison, 265 F.Supp. 108, 112 (M.D.Ga., 1967).

▆ Secondly, defendants claim that they will be embarrassed in participating in a joint trial which may result in "guilt by association." While this possibility may exist in a joint trial, it does not afford a ground for a severance. United States v. Crisona, 271 F.Supp. 150, 155 (S.D.N.Y., 1967). All the counts charge substantially a series of acts in furtherance of mail fraud. Any of the suggested prejudice can be dealt with by appropriate instructions or other action deemed warranted by the trial court.

▆▆ Finally, defendant Fishbein argues that if a joint trial is held it will undoubtedly be protracted in which event he will be unable to afford the out-of-state attorney of his choice and that the testimony of his co-defendants will be unavailable to him. Whether or not defendant is financially able to retain his own attorney is not determinative of whether a severance should be granted. There is no assurance that a separate trial would be substantially shorter than a joint trial. In any event the defendant will be assured of adequate representation if he is unable to provide his own. The contention that the testimony of his co-defendants will not be available to him unless he is tried separately also appears unrealistic. There is no more reason to think a co-defendant would be any more willing to waive his constitutional privilege against self-incrimination when called as a witness at a separate trial than he would be at a joint trial. United States v. Van Allen, 28 F.R.D. 329, 338–339 (S.D.N.Y., 1961), aff'd sub nom. United States v. Kelly, 349 F.2d 720, 759 (C.A. 2, 1965).

▆ Finding that the defendants have failed to show any prejudice that would lead this Court, in this case, to ignore the public interest in joint trials and to order an election or severance, defendants' motions will be denied.

## IV. Bill Of Particulars

▆ All of the defendants, with the exception of Thompson, have filed motions for bills of particulars, most of which are similar in nature. Suffice it to say that the information requested is far-ranging and extensive and seeks the most minutiae and detailed evidentiary proof.[4] The indictment clearly states the means by which the conspiracy was carried out and enumerates the overt acts in detail. However, these defendants seek further particularization of time and place of the acts and conduct attributed to them, whether the scheme was oral or in writing, the names of those who participated and myriad other such searching details. The total items requested go far beyond that to which they are entitled. To require the Government to furnish the minutiae sought would be tantamount to a preview of its case in advance of trial and compel a complete disclosure of all evidentiary proof.

▆ The allegations of the means by which the offenses charged were carried out and the overt acts are alleged in sufficient detail in the indictment to fully apprise the defendants of the charges against them and the substance of what the Government will rely upon to establish the existence of the conspiracy and mail fraud. The indictment fully meets the test in Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927). To require the disclosure of the detailed evidentiary proof sought might well hamper or foreclose the prosecution of this case, United States v. Bozza, 234 F.Supp. 15 (E.D.N.Y., 1964), and in any event, it is not the function of a bill of particulars to force a disclosure of evidentiary detail. Ross v. United States, 374 F.2d 97, 103

---

4. Fishbein has 35 requests, Emmons 31, Wolfson 35, and Frost 20. Many of the requests have numerous subdivisions.

(C.A. 8, 1967), cert. den. 389 U.S. 882, 88 S.Ct. 130, 19 L.Ed.2d 177.

■■■■■ In addition to the evidentiary details sought, defendants seek the names of potential trial witnesses and the names of the grand jury witnesses, a copy of all reports of investigations made by the Government, a copy of the Grand Jury minutes, and the names of the Grand Jurors. None of these are appropriate for a bill of particulars. A defendant is not entitled to a list of potential government witnesses, United States v. Kelley, 254 F.Supp. 9, 16 (S.D. N.Y., 1966), nor to copies of statements and reports of investigation made by the Government, United States v. United Concrete Pipe Corp., 41 F.R.D. 538 (N.D. Tex., 1966). Furthermore, the defendants are not entitled to the contents of the grand jury minutes or the names of witnesses appearing before the grand jury by way of a bill of particulars. Goodman v. United States, 63 App.D.C. 137, 70 F.2d 741, 743 (1934); United States v. Elliott, 266 F.Supp. 318, 327 (S.D.N.Y., 1967). As to the names and addresses of the grand jury members and Canadian insurance regulations, this information is public and is equally available to defendants as to the Government and need not be furnished in a bill of particulars. United States v. Bruce, 33 F.R.D. 133, 135 (N.D.Miss., 1963).

Defendants' motions for a bill of particulars will be denied.

## V. *Discovery*

■■■ The defendants, Emmons and Frost, have moved under Rules 16(b) and 17(c) for the production and inspection of papers, documents and tangible objects in the Government's possession relating to the evidentiary matters referred to in their bills of particulars. Defendants claim that the information sought is both reasonable and material to the preparation of their defense. These rules were adopted to give some measure of discovery as to documents and other materials otherwise beyond the reach of defendants which might be numerous and difficult to identify yet material to the defense of the case. Here the Government has in its possession a number of documents and papers which were seized or obtained by process from others, particularly records of corporations with which defendants were connected. These documents and papers were accumulated by the Government in the course of its investigation presumably for use either before the grand jury or at trial. If the documents seized or obtained by process from others are necessary to prove the Government's case at trial they would obviously be material to the preparation of the defense. Therefore, in this case involving five defendants and the possibility of protracted litigation the defendants should be provided access in advance of trial to the documents seized or obtained by process from others which remain in the Government's custody and are material to the defense of the action. See United States v. Tanner, 279 F.Supp. 457, 470–471 (N.D.Ill., 1967).

However, finding it inappropriate, for reasons previously stated, the Government will not be required to produce for defendants' inspection under Rule 16(b) or 17(e): (1) the grand jury minutes or testimony before the Grand Jury, Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), (2) the names of grand jury witnesses, United States v. Turner, 274 F.Supp. 412, 418 (E.D.Tenn., 1967), (3) the names of potential government trial witnesses, United States v. Birrell, 276 F.Supp. 798, 826 (S.D.N.Y., 1967), (4) reports or summaries of any government investigations, Peek v. United States, 321 F.2d 934, 940–941, 5 A.L.R.3d 802 (C.A. 9, 1963), cert. den. 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973; Rule 16(b), and (5) documents or statements obtained from others voluntarily, United States v. Hughes, 195 F.Supp. 795, 799 (S.D. N.Y., 1961), aff'd on other grounds, 325 F.2d 789 (C.A. 2, 1964), cert. den. 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178, except as provided under 18 U.S.C. § 3500.

Hence, in accordance with this opinion, an order will be entered granting defendants Emmons and Frost the right to inspect those papers and documents seized or obtained by process from others deemed material to the defense.[5] Since the defendants, Wolfson, Fishbein and Thompson, although charged as co-conspirators, have made no equivalent motions as required by Rule 16(b), they will be given, in the interest of justice, seven days following the date of this opinion in which to apply for discovery comparable to that afforded to the moving defendants.

## VI. *Motion To Suppress Evidence*

■■■ Defendants Frost and Emmons have moved under Rule 41(e), F.R.Cr.P. to suppress their signatures which were obtained on their fingerprint cards by the United States Marshal for identification purposes on the ground their Fifth and Fourth Amendment rights under the United States Constitution were violated. But the United States Supreme Court has laid to rest any claim that the Fifth Amendment privilege against self-incrimination or even their Sixth Amendment right to counsel attaches to the obtaining from a criminal defendant an exemplar of his handwriting. Gilbert v. California, 388 U.S. 263, 266–267, 87 S.Ct. 1951, 1953, 18 L.Ed. 2d 1178 (1967). In that case the court held that "[a] mere handwriting exemplar, in contrast to the context of what is written, like the voice or the body itself, is an identifying physical characteristic outside * * * [the Fifth Amendment's] protection." Id.

The Fifth Amendment "privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature * * *," Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966), but "compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." Id. at 764, 86 S.Ct. at 1832. Furthermore, the Court stated in *Gilbert* that "[t]he taking of the exemplars was not a 'critical' stage of the criminal proceedings entitling petitioner to the assistance of counsel." Gilbert v. California, supra, 388 U.S. at 267, 87 S.Ct. at 1953. *Gilbert* was even a more serious situation than in the instant case from a constitutional rights point of view since in that case the handwriting exemplar was obtained in the course of interrogation specifically for use as evidence while here the signatures were obtained only to complete a standard identification process. In United States v. Braverman, 376 F.2d 249, 253 (C.A. 2, 1967), cert. den. 389 U.S. 885, 88 S.Ct. 155, 19 L.Ed.2d 182 the Court held that requiring a fingerprint card to be signed did not violate either the Fifth or Sixth Amendment.

■■■ Defendants also assert, without the citation of authority, that requiring their identifying signatures violated the Fourth Amendment, apparently because it constituted an unreasonable search and seizure. This is a wholly unrealistic position. Requiring the signature is not a "search" because a "'search' implies the authoritative invasion and quest and generally an examination of or into the person, the property, the premises or the personal effects of a person * * *." Monroe v. Pape, 221 F.Supp. 635, 642 (N.D.Ill., 1963). But even if requiring the signature was a search and seizure, it would still be reasonable not only because it was an incident to a lawful arrest but because it is as equally reasonable as taking a blood sample for analysis which has been held inviolative of the Fourth Amendment. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1965).

The motion to suppress the signatures on the fingerprint cards will be denied.

---

5. The order presented will specify the dates, times, conditions and manner of the inspection. Rule 16(d), F.R.Cr.P.

Finally, all the defendants, except Thompson, have moved to suppress and return (1) certain documentary evidence obtained pursuant to a search warrant issued for Garage No. 21, located at the rear of 614 West 29th Street, Wilmington, Delaware, (2) certain other corporate records and documents obtained under a grand jury subpoena which came from storage in an office at Brandywine Summit, Pennsylvania and (3) certain documents also obtained on a grand jury subpoena which came from the offices of Harold Shaffer, Esquire, a Wilmington attorney. Since these motions call for the resolution of facts which are not now apparent from the record, the motions will be held in abeyance until a hearing is held at which time evidence will be received to clarify the factual issues in question.

Present order in accordance with this opinion.